Kevin Abbott, SBN 281312
  kabbott@lp-attorneys.com
Chandra Winter SBN 325353
  cwinter@lp-attorneys.com
LOBB & PLEWE, LLP
4160 Temescal Canyon Road, Suite 202
Corona, California 92883
(951) 788-9410   Fax: (951) 788-0766

Scott R. Brown, SBN 151635
  sbrown@hoveywilliams.com
HOVEY WILLIAMS LLP
84 Corporate Woods
10801 Mastin Boulevard, Suite 1000
Overland Park, Kansas 66210
(913) 647-9050   Fax: (913) 647-9057

Attorneys for Defendant / Counterclaimant

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PENSMORE REINFORCEMENT
TECHNOLOGIES, LLC
d/b/a HELIX STEEL,

      Plaintiff /
      Counterclaim Defendant,

      v.

CORNERSTONE MANUFACTURING
AND DISTRIBUTION, INC.,

      Defendant / Counterclaimant.

Case No. 5:21-cv-01556-JWH-SHK

**ANSWER, SEPARATE DEFENSES, AND COUNTERCLAIMS**

## ANSWER

    Defendant, Cornerstone Manufacturing and Distribution, Inc. ("Cornerstone"), answers the numbered paragraphs of Plaintiff's Complaint for Declaratory Judgment as follows:

## INTRODUCTION

1.　This case arises out of Cornerstone's infringement of Helix's patents for Concrete Reinforcing Fibers, US Patent No. 10,266,970 ("'970 Patent") and a Micro-Rebar Concrete Reinforcement System, US Patent No. 9,440,881 ("'881 Patent"). The '970 and '881 Patents protect Helix's concrete reinforcing Micro Rebar™ products. Micro Rebar™ is an improved alternative to traditional rebar that consists of thousands of small twisted metal fibers mixed into concrete prior to its application.



Helix's patented concrete reinforcing Micro Rebar™ results in stronger, more durable, and more flexible concrete than traditional rebar, with improved fatigue endurance, crack resistance, impact capacity, energy absorption, and shatter resistance.

**ANSWER:** Cornerstone states that Plaintiff has accurately stated the nature of this action in the first sentence of this paragraph but denies that it infringes or has infringed any of Plaintiff's patents. Cornerstone denies the allegations in the second sentence of this paragraph. Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph and, on that basis, denies them.

2.　Cornerstone's principals, who are also former employees of Helix, used the knowledge they gained during their tenure with Helix to help Cornerstone manufacture, import, market, and sell products that infringe Helix's '970 and '881 Patents.

**ANSWER:** Denied.

3.      Cornerstone's infringing product is copied from and highly similar to Helix's MicroRebar reinforcement, and both are covered by the claims of the '970 and '881 Patents:



**ANSWER:** Denied.

4.      The Court should enjoin Cornerstone, and compensate Helix for the damage caused to it.

**ANSWER:** Denied.

### THE PARTIES

5.      Pensmore Reinforcement Technologies, LLC ("Pensmore") is a limited liability company headquartered in Ann Arbor, Michigan. It operates under the assumed name Helix Steel ("Helix"). Pensmore was previously known as Polytorx, LLC.

**ANSWER:** Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

6.      On information and belief, Cornerstone is a California corporation located at 955 Cornerstone Way in the City of Corona, County of Riverside, State of California. Therefore, Cornerstone resides within the Central District of California. On information and belief, Cornerstone also operates under the name Badger Forms. (See Exhibit A.)

1   **ANSWER:**  To the extent this paragraph states legal conclusions, no response

2   is required. To the extent a response is required, Cornerstone admits the allegations

3   in this paragraph.

4   ### JURISDICTION AND VENUE

5   7.      This is a complaint for direct and contributory patent infringement

6   arising under the Patent Act, 35 U.S.C. § 271 *et seq*. This Court has subject matter

7   jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

8   **ANSWER:**  To the extent this paragraph states legal conclusions, no response

9   is required. Cornerstone states that Plaintiff has accurately stated the nature of this

10  action but denies that it infringes or has infringed any of Plaintiff's patents.

11  Cornerstone admits that this Court has subject-matter jurisdiction.

12  8.      Venue is proper in this Court under 28 U.S.C. § 1400(b) because

13  Cornerstone is a California corporation with a regular and established place of

14  business in this District, and therefore resides in this District under 28 U.S.C. §§

15  1391(b) and 1400(b), and because Cornerstone has committed acts of infringement

16  in this District, directly and/or through a third party because it manufacturers [*sic*],

17  makes, imports, sells, offers to sell or uses concrete reinforcing fibers for a variety

18  of concrete applications, including concrete reinforcing twisted steel products

19  identified under names such as Badger 5:25, SteelX, and SteelX 5:25 within this

20  judicial District. Cornerstone has purposefully directed its activities to this State and

21  this District and/or purposefully availed itself of this jurisdiction.

22  **ANSWER:**  To the extent this paragraph states legal conclusions, no response

23  is required. Cornerstone admits that it has a regular and established place of business

24  in this District and that it imports, sells, offers to sell, and uses concrete-reinforcing

25  fibers in this District. Cornerstone denies that it has committed acts of infringement

26  in this District or elsewhere. Cornerstone admits that venue is proper in this District.

27  9.      This Court has personal jurisdiction over Cornerstone for the reasons

28  identified above and according to the laws of the United States.

**ANSWER:**  Cornerstone incorporates its answers to paragraphs 7 and 8 as though fully set forth herein. Cornerstone admits that it is subject to this Court's personal jurisdiction.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    BACKGROUND**

10.    Helix is a leading provider of concrete reinforcement in the form of twisted steel fibers that are mixed with concrete to make the concrete stronger, more durable, and more flexible.

**ANSWER:**  Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

11.    Helix was founded as part of a project that challenged University of Michigan Engineers to create an alternative to traditional rebar that could provide better flexural strength, resiliency, ductility, and elasticity to concrete structures.



Traditional Rebar

**ANSWER:**  Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

12.    Helix developed its Micro Rebar™ concrete reinforcement, also known as Helix 5-25, Helix 5-25 Micro Rebar™ or Twisted Steel Micro Rebar™. It consists of thousands of small twisted metal fibers that are mixed into concrete prior to application:





**ANSWER:** Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

13. Helix invested significant time and resources to develop its concrete reinforcing Micro Rebar™ technology, and underwent stringent testing to ensure safety and efficacy.

**ANSWER:** Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

14. Helix's Micro Rebar™ concrete reinforcement technology results in concrete that is stronger, more durable, and more flexible than concrete used with traditional rebar. Concrete treated with Helix's Micro Rebar™ technology requires less repairs and has a longer lifespan, thus saving time and money.

**ANSWER:** Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

1    15.    Helix's Micro Rebar™ concrete reinforcement technology meets

2    building code requirements. Helix Micro Rebar™ is the first fiber for use in

3    concrete with code approval for structural applications. Helix Micro Rebar™ also

4    meets ACI, IBC and IRC codes, including those through its two evaluation service

5    reports from ICC-ES AC 470 & ESR-3949, IAPMO EC-015 2016 and ER 279.

6    **ANSWER:**  Cornerstone lacks sufficient knowledge or information to form a

7    belief as to the truth of the allegations in this paragraph and, on that basis, denies

8    them.

9    16.    Helix manufactures its Micro Rebar™ product in Grand Rapids,

10    Michigan. Helix sells genuine Helix concrete reinforcing products under its

11    trademarks Helix™, Micro Rebar™, Twisted Steel Micro Rebar™, and TSMR™.

12    Helix sells and distributes its proprietary Micro Rebar™ product worldwide.

13    **ANSWER:**  Cornerstone lacks sufficient knowledge or information to form a

14    belief as to the truth of the allegations in this paragraph and, on that basis, denies

15    them.

16    17.    Helix's proprietary concrete reinforcing Micro Rebar™ product and

17    technology is protected by various patents, including the '970 and '881 Patents.

18    **ANSWER:**  Cornerstone lacks sufficient knowledge or information to form a

19    belief as to the truth of the allegations in this paragraph and, on that basis, denies

20    them.

21    18.    Helix's Micro Rebar™ concrete reinforcement is used in interior and

22    exterior settings and in high load applications. For example, Helix has been used to

23    replace traditional rebar in slabs designed for M1 Abrams Tank traffic by the U.S.

24    Military.

25    **ANSWER:**  Cornerstone lacks sufficient knowledge or information to form a

26    belief as to the truth of the allegations in this paragraph and, on that basis, denies

27    them.

28

19.     Helix has enjoyed considerable success with its Micro Rebar™ reinforcement technology. Helix's Micro Rebar™ technology has been used in hundreds of millions of square feet of concrete, and tens of thousands of successful structures. Helix has enjoyed years of successful applications with a strong record of structural success.

**ANSWER:** Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

20.     Helix's Micro Rebar™ has been and remains the leading concrete reinforcing twisted steel fiber product of its kind. Helix's products are known throughout the world to represent genuine, high-quality goods.

**ANSWER:** Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

**B.     THE PATENTS-IN-SUIT**

21.     The '970 Patent is entitled "Concrete Reinforcing Fibers" and issued on April 23, 2019. A true and correct copy of '970 Patent, along with its Certificate of Correction, are attached as Exhibit B.

**ANSWER:** Cornerstone states that the '970 Patent speaks for itself.

22.     Pensmore Reinforcement Technologies, LLC owns by assignment the entire right, title and interest in and to the '970 Patent.

**ANSWER:** Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

23.     The '881 Patent is entitled "Micro-Rebar Concrete Reinforcement System" and was issued on September 13, 2016. A true and correct copy of the '881 Patent is attached as Exhibit C.

**ANSWER:** Cornerstone states that the '881 Patent speaks for itself.

24.     Pensmore Reinforcement Technologies, LLC owns by assignment the entire right, title and interest in and to the '881 Patent.

**ANSWER:** Cornerstone lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph and, on that basis, denies them.

25.     The '970 and '881 Patents protect concrete reinforcing fibers, as well as a method for manufacturing concrete reinforcing fibers and the design class system for micro reinforced concrete.

**ANSWER:** Cornerstone states that that '970 and '881 Patents speak for themselves.

## C.     CORNERSTONE'S [ALLEGED] INFRINGEMENT

26.     Cornerstone is owned and headed by the former vice president of sales and management team member of Helix, Hans Hausfeld. Cornerstone directly competes with Helix in the market for concrete reinforcing twisted steel fibers.

**ANSWER:** Admitted.

27.     Cornerstone, frequently operating under the d/b/a name Badger Forms, intentionally targeted, solicited and employs multiple former Helix employees and sales representatives, including at least Jay Middleton, Jeff Knight, and Wes Dees. See, for instance, Exhibit D, showing Cornerstone's U.S. Trademark Reg. No. 5528776 for "Badger Forms."

**ANSWER:** Cornerstone admits that it does business under the name Badger Forms and employs former Helix employee Jay Middleton. Cornerstone denies the remaining allegations in this paragraph.

28.     Cornerstone was built on Helix's technology platform. In addition to forming its business with former Helix personnel—each has retained confidential and proprietary Helix information—Cornerstone on information and belief arranged for Helix's former manufacturing facility in China to manufacture and import into

1  the United States infringing concrete reinforcing twisted steel fiber products for

2  distribution and sale by Cornerstone.

3       **ANSWER:** Denied.

4       29.    On information and belief, Cornerstone's infringing concrete

5  reinforcing twisted steel fiber products are made by Helix's proprietary process.

6       **ANSWER:** Denied.

7       30.    In an attempt to capitalize on Helix's industry recognition and goodwill

8  built up over many years as the leading supplier of concrete reinforcing twisted steel

9  fibers sold under the name Helix 5-25, Cornerstone markets and sells its infringing

10  product under substantially similar names that include, at minimum, Badger 5:25,

11  SteelX 5:25 or SteelX ("Accused Products"). See Exhibit E, Design Process

12  Brochure for SteelX 5:25.

13       **ANSWER:** Cornerstone admits that it uses the name Badger 5:25, SteelX

14  5:25, and SteelX for the Accused Products. Cornerstone denies the remaining

15  allegations in this paragraph.

16       31.    Also on information and belief, Cornerstone partnered with former

17  Helix Australian distributor Reuben Ramsay to sell its infringing concrete

18  reinforcing twisted steel fibers in the United States and Australia under the brand

19  name "SteelX." See Exhibit F, Cornerstone's U.S. Trademark Reg. No. 6250129 for

20  "SteelX." See also Exhibit G, specimen of product packaging for SteelX submitted

21  by Cornerstone as evidence to support the U.S. SteelX trademark registration.

22

23

24

25

26

27

28



**ANSWER:**  Cornerstone admits that is uses the brand name "SteelX" and distributes products in the United States and Australia. Cornerstone denies the remaining allegations in this paragraph.

32.     Cornerstone markets and sells the Accused Products through its network of former Helix sales representatives, employees, and associates by claiming that its Accused Products are equivalent to Helix's product, thus conceding that its product is nothing more than a re-branded duplicate of Helix's product.

**ANSWER:** Denied.

33.     Helix learned that Cornerstone was attempting to introduce a duplicate of Helix's patented Micro Rebar reinforcement into the United States. On February 21, 2020, Helix sent Cornerstone a letter notifying Cornerstone of the '970 and '881 patents, its potential infringement of those patents, and warning Cornerstone that any unauthorized marketing, sale, or offer to sell an infringing concrete reinforcement fiber product into the United States would result in damages and irreparable harm.

1      **ANSWER:**  Cornerstone states that Helix's February 21, 2020 letter speaks

2  for itself. Cornerstone denies the remaining allegations in this paragraph.

3      34.    Despite possessing knowledge of Helix's '970 and '881 patents,

4  Cornerstone continued with its plans to market, offer to sell and sell the Accused

5  Products in United States, including representing that the Accused Products are the

6  same as Helix's patented Micro Rebar reinforcement.

7      **ANSWER:**  Cornerstone denies that it represents or has represented that the

8  Accused Products are the same as Helix's patented Micro Rebar reinforcement.

9  Cornerstone admits the remaining allegations in this paragraph.

10      35.    Helix recently learned that Cornerstone (Badger Forms) is actively

11  marketing and selling the Accused Products in the United States, including to

12  Helix's customers.

13      **ANSWER:**  Cornerstone lacks sufficient knowledge or information to form a

14  belief as to the truth of the allegations in this paragraph and, on that basis, denies

15  them.

16      36.    For instance, in an August 5, 2020 email from Cornerstone (Badger

17  Forms) principal Jay Middleton to the City of Overland Park, Kansas (a Helix

18  customer), Middleton represented to the City of Overland Park that he used to work

19  for Helix, left Helix, but maintained his commitment to the idea that you can make

20  better concrete with twisted steel fiber in the concrete so "we launched our own

21  brand of that product." (Exhibit H.)

22      **ANSWER:**  Cornerstone states that the August 5, 2020 email attached as

23  Exhibit H speaks for itself. Cornerstone denies the remaining allegations in this

24  paragraph.

25      37.    Cornerstone (Badger Forms) followed up with another email on April

26  22, 2021 informing the City of Overland Park that "we finally have stock of our

27  twisted steel concrete reinforcement product, called SteelX, here in KC." (Exhibit I.)

28

**ANSWER:**  Cornerstone states that the April 22, 2021 email attached as Exhibit I speaks for itself.

38.     In another example, an April 24, 2021 email from Cornerstone (Badger Forms) principal Middleton to the City of Overland Park, Badger claims, asserts and markets the Accused Products as "physically equivalent" to Helix's patented Micro Rebar (TSMR product) described in IAPMO E-015 and ICC AC-470. See Exhibit J, a portion of which is reproduced below.



**ANSWER:**  Cornerstone states that the April 24, 2021 email attached as Exhibit J speaks for itself.

39.     Recently, on information and belief, Helix learned that Cornerstone (Badger Forms) recently applied for permits for a foundation job in Grain Valley, Missouri using the Accused Products.



**ANSWER:**  Denied.

40.     On information and belief, Cornerstone (Badger Forms) placed the Accused SteelX Products into foundations in Grain Valley, Missouri. Also on information and belief, Cornerstone relied on its equivalence to Helix's patented TSMR product covered by the same IAPMO EC-015 standard in order to obtain approval for the permits and job.

**ANSWER:** Denied.

41.     Cornerstone markets, sells and/or offers to sell the Accused Products directly to Helix customers and others, including through former Helix personnel who now work for Cornerstone.

**ANSWER:** Admitted.

42.     Cornerstone's Accused Products infringe one or more claims of the '970 and '881 Patents.

**ANSWER:** Denied.

**FIRST CAUSE OF ACTION:**

**Violation of 35 U.S.C. § 271 – Direct Infringement of the '970 Patent**

43.     Helix incorporates the above paragraphs as though fully set forth herein.

**ANSWER:** Cornerstone incorporates its answers to the above paragraphs as though fully set forth herein.

44.     In violation of 35 U.S.C. § 271, Cornerstone has infringed and continues to infringe, literally or under the doctrine of equivalents, at least claim 1 of the '970 Patent by making, using, selling, or offering for sale within the United States, or importing into the United States, concrete reinforcing twisted steel fibers that are covered by one or more claims of the '970 Patent, including but not limited to the Accused Products.

**ANSWER:** Denied.

45.     An analysis of a sample of Cornerstone's Accused Products reveals that Cornerstone's Accused Products comprise a reinforcing fiber. Below is a photo of

one of the Accused Products, and an image taken from Cornerstone's SteelX 5:25 design brochure, both showing the Accused Products. See Exhibit E.



**ANSWER:** Cornerstone states that the images contained in Exhibit E speak for themselves. Cornerstone denies the remaining allegations in this paragraph.

46. Cornerstone's Accused Products comprise a body defining a longitudinal axis and having a cross section in the shape of a bilateral truncated circle.



**ANSWER:** Denied.

47. Measurements of a sample show that the bilateral truncated circle of Cornerstone's Accused Products have an aspect ratio calculated to be between 1.53 and 1.93, wherein the aspect ratio is a ratio of width (w) to thickness (t) of the body. In particular, a sample measured 0.62 mm (0.0244 inches) in width, and 0.40 mm (0.0157 inches) thick, with an aspect ratio of 1.55.

1    **ANSWER:**  Cornerstone specifically denies that it sells product with the

2    alleged attributes. Cornerstone lacks sufficient knowledge or information to form a

3    belief as to the truth of the remaining allegations in this paragraph and, on that basis,

4    denies them.

5    48.    Cornerstone's Accused Products have a body that is twisted along its

6    longitudinal axis.



18    **ANSWER:**  . Admitted.

19    49.    Cornerstone's Accused Products have a body with a thickness

20    measured to be between 0.01375 inches and 0.0159 inches. In particular, a sample

21    measured 0.40 mm (0.0157 inches) thick.

22    **ANSWER:**  Cornerstone lacks sufficient knowledge or information to form a

23    belief as to the truth of the allegations in the second sentence of this paragraph and,

24    on that basis, denies them. Cornerstone denies the remaining allegations in this

25    paragraph.

26    50.    As a direct and proximate consequence of Cornerstone's infringement,

27    Helix has been, is being, and, unless such acts and practices are enjoined by the

28    Court, will continue to be injured in its business and property rights, and has

1  suffered, is suffering, and will continue to suffer injury and damages for which it is

2  entitled to relief under 35 U.S.C. § 284 adequate to compensate for such

3  infringement, including lost profits, but in no event less than a reasonable royalty.

4  **ANSWER:** Denied.

5  51. Cornerstone's infringement is further causing and will continue to

6  cause Helix irreparable harm, for which there is no adequate remedy at law. Unless

7  and until enjoined by this Court, Cornerstone will continue to infringe the '970

8  Patent. Under 35 U.S.C. § 283, Helix is entitled to an injunction against further

9  infringement.

10  **ANSWER:** Denied.

11  52. Additionally, on information and belief, Cornerstone knows and has

12  known that its Accused Products infringe at least claim 1 of the '970 patent.

13  **ANSWER:** Denied.

14  53. On information and belief, Cornerstone has made no attempt to design

15  around the '970 patent. Cornerstone's infringement was undertaken willfully and

16  without permission or license to use Helix's '970 Patent.

17  **ANSWER:** Denied.

18  54. On information and belief, Cornerstone's infringement of at least claim

19  1 of the '970 patent has been willful. Helix has been damaged as the result of

20  Cornerstone's willful infringement, and seeks increased damages, up to and

21  including treble damages.

22  **ANSWER:** Denied.

23  55. Helix is entitled to and claims all damages allowable by law including,

24  injunctive relief, adequate compensation for the infringement, costs, interest,

25  attorney fees, and for the sales of infringing product as well as the sales of any

26  accessory/ancillary products.

27  **ANSWER:** Cornerstone denies that Plaintiff is entitled to such relief.

28

56.     Helix further seeks a declaration that it is entitled to three times the amount of damages found or assessed pursuant to 35 U.S.C. § 284.

**ANSWER:**  Cornerstone denies that Plaintiff is entitled to such relief.

**SECOND CAUSE OF ACTION:**

**Violation of 35 U.S.C. § 271 – Indirect Infringement of the '970 Patent**

57.     Helix incorporates the above paragraphs as though fully set forth herein.

**ANSWER:**  Cornerstone incorporates its answers to the above paragraphs as though fully set forth herein.

58.     Cornerstone has indirectly infringed on at least claim 1 of the '970 Patent including by inducing others, including its independent sales representatives, distributors, other re-sellers, customers, Helix customers and other end users of the Accused Products to directly infringe at least claim 1 of the '970 Patent including by making, using, selling, or offering to sell Cornerstone's Accused Products.

**ANSWER:**  Denied.

59.     On information and belief, Cornerstone intentionally took actions that induced others, including its independent sales representatives, distributors, other re-sellers, customers, Helix customers and other end users of the Accused Products, to directly infringe at least claim 1 of the '970 Patent.

**ANSWER:**  Denied.

60.     Cornerstone has known of the '970 patent since at least February 21, 2020, and has induced infringement since at least that time.

**ANSWER:**  Denied.

61.     Cornerstone's actions demonstrate an intent to cause the acts that form the basis of the direct infringement, and that Cornerstone did so with the specific intent to infringe the '970 patent.

**ANSWER:**  Denied.

62.     Cornerstone has also contributed to the infringement of at least claim 1 of the '970 patent by others, including its independent sales representatives, distributors, other re-sellers, customers, Helix customers and other end users of the Accused Products, that directly infringe at least claim 1, by making, using, selling or offering to sell the Accused Products recited in at least claim 1 of the '970 patent. For example, Cornerstone's customers and/or the end users have incorporated Accused Products into their reinforced concrete projects.

**ANSWER:** Denied.

63.     Cornerstone has contributorily infringed and is a contributory infringer because, with knowledge of the '970 Patent, it supplies the Accused Products, which comprise a material part of the claimed combination, where the Accused Products are not a staple article of commerce, and have no substantial non-infringing uses.

**ANSWER:** Denied.

64.     Cornerstone knew that the Accused Products were especially made or adapted for use in a manner that would infringe at least claim 1 of the '970 patent.

**ANSWER:** Denied.

65.     Helix has been damaged as a result of Cornerstone's indirect infringement, and is entitled to relief under 35 U.S.C. §§ 283 and 284 based on Cornerstone's induced and/or contributory infringement.

**ANSWER:** Denied.

### THIRD CAUSE OF ACTION:

### Violation of 35 U.S.C. § 271 – Direct Infringement of the '881 Patent

66.     Helix incorporates the above paragraphs as though fully set forth herein.

**ANSWER:** Cornerstone incorporates its answers to the above paragraphs as though fully set forth herein.

67.     In violation of 35 U.S.C. § 271, Cornerstone has infringed and continues to infringe, literally or under the doctrine of equivalents, at least claim 3

1  of the '881 Patent by making, using, selling, or offering for sale within the United

2  States, or importing into the United States, concrete reinforcing twisted steel fibers

3  that are covered by one or more claims of the '881 Patent, including but not limited

4  to the Accused Products and the design class system in which they are sold.

5      **ANSWER:**  Denied.

6      68.    Cornerstone claims that its product complies with IAPMO[1] EC 015 and

7  that it is "physically equivalent" to Helix's 5-25 Micro Rebar TSMR, covered by the

8  IAPMO EC 015 criteria. (See Exhibit J; see also Exhibit K, third party Twining

9  Report certifying that Cornerstone's Accused Products meets the requirements per

10  these acceptance criteria and sections to be classified as a 'Twisted Steel Micro

11  Rebar' (TSMR) product per Iapmo's EC 015-2016 Section 3.1….").

12     **ANSWER:**  Denied.

13     69.    Claim 3 of Helix's '881 Patent includes similar elements as the IAPMO

14  EC 015 standard. Because Cornerstone claims the Accused Products meets

15  IAPMO's EC 015 criteria, Cornerstone's Accused Products infringes at least Claim

16  3 of the '881 Patent.

17     **ANSWER:**  Denied.

18     70.    More specifically, on information and belief, Cornerstone's Accused

19  Products are a micro reinforcement comprised of a twisted steel fiber having elastic,

20  perfectly plastic behavior up to the point of dominant crack formation in a concrete

21  matrix reinforced by the micro reinforcement. Cornerstone's Accused Products

22  comprise twisted steel fibers that are physically equivalent to Helix's 5-25 Micro

23  Rebar TSMR, both of which comprise twisted steel fiber having elastic, perfectly

24  plastic behavior up to the point of a dominant crack formation. See Exhibit M; see

25  also Exhibit J. Additionally, the twisted steel fiber further includes stable tensile

26  resistance after dominant crack formation up to a characteristic length determined

27  _____

28  [11] International Association of Plumbing and Mechanical Officials.

1 by length, material used to manufacture and the number of twists provided in the

2 twisted steel fiber. See, for instance, Ex. L, IAPMO EC-015 Sections 3 and 8

3 requiring twisted steel fiber complying with the standard to have a stable tensile

4 resistance after dominant crack formation up to a characteristic length determined

5 by length, material used to manufacture and the number of twists in the twisted steel

6 fiber. See also Exhibit J.

7   **ANSWER:** Cornerstone lacks sufficient knowledge or information to form a

8 belief as to the truth of the allegations in this paragraph and, on that basis, denies

9 them.

10   71.   On information and belief, Cornerstone's Accused Products comprise a

11 twisted steel fiber with a strain capacity increase requirement determined by tensile

12 test results indicating a statistically significant increase (minimum of 95%

13 confidence, the maximum p-value in a two sample t-test, 0.05) in tensile strain

14 capacity versus structural plain concrete, wherein a minimum of six control (plain

15 concrete) specimens are considered in the analysis in addition to a minimum number

16 of twisted steel fiber samples. See, for instance, Ex. L, Section 8.1 of IAPMO EC

17 015 which requires conforming products to meet this requirement: "Tensile test

18 results shall indicate a statistically significant increase (minimum of 95% confident,

19 the maximum p-value in a two sample t-test, 0.05) in tensile strain capacity

20 compared to structural plain concrete. A minimum of six control (plain concrete)

21 specimens shall be considered in the analysis in addition to the minimum number of

22 TSMR samples required in Section 6.0."

23   **ANSWER:** Cornerstone lacks sufficient knowledge or information to form a

24 belief as to the truth of the allegations in this paragraph and, on that basis, denies

25 them.

26   72.   On information and belief, Cornerstone's Accused Products comprise a

27 twisted steel fiber with a post-crack tensile stability requirement determined by

28 tensile test results indicating that the median of a load carried at Sa (design crack

ANSWER, SEPARATE DEFENSES,
AND COUNTERCLAIMS

5:21-cv-01556-JWH-SHK

width) of the test specimen divided by a maximum load after 0.01 in displacement is equal to or greater than 0.85, wherein the twisted steel fiber crack width, Sa, is the crack width resulting from tensile stresses typically measured for structural design applications and represents the average upper limit of displacement in a direct tension test where the stress remains stable, wherein Sa is set forth as: Sa= σ+X/3 where σ=material elongation as stated on raw material certification test reports, inch (mm), X=elongation from twist, representing the materials approximate ability to "stretch" and need not be exactly determined, inch (mm), x=1-cos(atan(n2πd/l)), and where n=number of full twists in the twisted steel fiber, d= equivalent diameter of the twisted steel fiber, inches (mm), L=length of the twisted steel fiber, inches (mm), and X=percentage reduction in length from twisting of the twisted steel fiber, and where the resulting values of Sa are used as a reference point for computing tensile resistance and compute maximum allowable crack widths. See, for instance, Section 3.1 of IAPMO EC 015 which specifies a design crack width resulting from tensile stresses and requires tensile tests to indicate that the median of the load carried at Sa divided by the maximum load after 0.01 inch (0.25 mm) displacement is equal to or greater than 0.85, and utilizes the same formula referenced above to calculate Sa:

$$S_a = \delta + X/3 \qquad\qquad (Eq.-1)$$

Where:
  $\delta$ = material elongation as stated on raw material certification test reports, inch (mm).
  $X$ = elongation from twist, representing the materials approximate ability to "stretch" and need not be exactly determined, inch (mm).

$$X = 1 - \cos\left(\operatorname{atan}\left(\frac{n2\pi d}{l}\right)\right) \qquad\qquad (Eq.-2)^i$$

Where:
  $n$ = number of full revolutions of the part
  $d$ = equivalent diameter of the wire, inches (mm)
  $L$ = length of the part, inches (mm)
  $X$ = percentage reduction in length from twisting the part

(Exhibit L.) See also, for instance, Section 8.0 of IAPMO EC 015 which specifies that tensile tests shall indicate that the median of the load carried at Sa divided by

1 | the maximum load after 0.01 inch (0.25mm) displacement is equal to or greater than

2 | 0.85. (Exhibit L.)

3 | **ANSWER:** Cornerstone lacks sufficient knowledge or information to form a

4 | belief as to the truth of the allegations in this paragraph and, on that basis, denies

5 | them.

6 | 73. As a direct and proximate consequence of Cornerstone's infringement,

7 | Helix has been, is being, and, unless such acts and practices are enjoined by the

8 | Court, will continue to be injured in its business and property rights, and has

9 | suffered, is suffering, and will continue to suffer injury and damages for which it is

10 | entitled to relief under 35 U.S.C. § 284 adequate to compensate for such

11 | infringement, including lost profits, but in no event less than a reasonable royalty.

12 | **ANSWER:** Denied.

13 | 74. Cornerstone's infringement is further causing and will continue to

14 | cause Helix irreparable harm, for which there is no adequate remedy at law. Unless

15 | and until enjoined by this Court, Cornerstone will continue to infringe the '881

16 | Patent. Under 35 U.S.C. § 283, Helix is entitled to an injunction against further

17 | infringement.

18 | **ANSWER:** Denied.75. Additionally, on information and belief,

19 | Cornerstone knows and has known that its Accused Products infringe at least claim

20 | 3 of the '881 patent.

21 | **ANSWER:** Denied.

22 | 76. On information and belief, Cornerstone has made no attempt to design

23 | around the '881 patent. Cornerstone's infringement was undertaken willfully and

24 | without permission or license to use Helix's '881 Patent.

25 | **ANSWER:** Denied.

26 | 77. On information and belief, Cornerstone's infringement of at least claim

27 | 3 of the '881 patent has been willful. Helix has been damaged as the result of

28 |

1  Cornerstone's willful infringement, and seeks increased damages, up to and
2  including treble damages.

3      **ANSWER:** Denied.

4      78.    Helix is entitled to and claims all damages allowable by law including
5  injunctive relief, adequate compensation for the infringement, costs, interest,
6  attorney fees, and for the sales of infringing product as well as the sales of any
7  accessory/ancillary products.

8      **ANSWER:** Cornerstone denies that Plaintiff is entitled to such relief.

9      79.    Helix further seeks a declaration that it is entitled to three times the
10  amount of damages found or assessed pursuant to 35 U.S.C. § 284.

11      **ANSWER:** Cornerstone denies that Plaintiff is entitled to such relief.

12                    **FOURTH CAUSE OF ACTION:**

13  **Violation of 35 U.S.C. § 271 – Indirect Infringement of the '881 Patent**

14      80.    Helix incorporates the above paragraphs as though fully set forth
15  herein.

16      **ANSWER:** Cornerstone incorporates its answers to the above paragraphs as
17  though fully set forth herein.

18      81.    Cornerstone has indirectly infringed on at least claim 3 of the '881
19  Patent including by inducing others, including its independent sales representatives,
20  distributors, other re-sellers, customers, Helix customers and other end users of the
21  Accused Products to directly infringe at least claim 3 of the '881 Patent including by
22  making, using, selling, or offering to sell Cornerstone's Accused Products.

23      **ANSWER:** Denied.

24      82.    On information and belief, Cornerstone intentionally took actions that
25  induced others, including its independent sales representatives, distributors, other
26  re-sellers, customers, Helix customers and other end users of the Accused Products,
27  to directly infringe at least claim 3 of the '881 Patent.

28      **ANSWER:** Denied.

1      83.    Cornerstone's actions demonstrate an intent to cause the acts that form

2  the basis of the direct infringement, and that Cornerstone did so with the specific

3  intent to infringe the '881 patent.

4      **ANSWER:**  Denied.

5      84.    Cornerstone's actions demonstrate an intent to cause the acts that form

6  the basis of the direct infringement, and that Cornerstone did so with the specific

7  intent to infringe the '881 patent.

8      **ANSWER:**  Denied.

9      85.    Cornerstone has also contributed to the infringement of at least claim 3

10  of the '881 patent by others, including its independent sales representatives,

11  distributors, other re-sellers, customers, Helix customers and other end users of the

12  Accused Products, that directly infringe at least claim 3, by making, using, selling or

13  offering to sell the Accused Products recited in at least claim 3 of the ' 881 patent.

14  For example, Cornerstone's customers and/or the end users have incorporated

15  Accused Products into their reinforced concrete projects.

16      **ANSWER:**  Denied.

17      86.    Cornerstone has contributorily infringed and is a contributory infringer

18  because, with knowledge of the '881 Patent, it supplies the Accused Products, which

19  comprise a material part of a claimed combination, where the Accused Products is

20  not a staple article of commerce, and has no substantial non-infringing uses.

21      **ANSWER:**  Denied.

22      87.    Helix has been damaged as a result of Cornerstone's indirect

23  infringement, and is entitled to relief under 35 U.S.C. §§ 283 and 284 based on

24  Cornerstone's induced and/or contributory infringement.

25      **ANSWER:**  Denied.

26      88.    Helix has been damaged as a result of Cornerstone's indirect

27  infringement, and is entitled to relief under 35 U.S.C. §§ 283 and 284 based on

28  Cornerstone's induced and/or contributory infringement.

1     **ANSWER:** Denied.

2           **GENERAL DENIAL**

3     Cornerstone denies all allegations in Plaintiff's Complaint not expressly and

4 specifically admitted above.

5           **SEPARATE DEFENSES**

6     Cornerstone sets forth the following separate defenses and does not intend to

7 limit thereby its ability to seek to allege any and all defenses not presently known

8 that are revealed during the course of discovery or at trial in this case. Cornerstone

9 asserts these defenses, affirmative or otherwise, without assuming any burden of

10 proof that it would not otherwise have.

11     1.     Plaintiff's Complaint fails to state a claim upon which any relief may

12 be granted.

13     2.     Cornerstone has not infringed and does not infringe literally or under

14 the doctrine of equivalents any valid claim of the '970 Patent or '881 Patent, either

15 directly or indirectly.

16     3.     The claims of the '970 Patent and '881 Patent are invalid for failure to

17 satisfy one or more of the statutory requirements of 35 U.S.C. §§ 101, 102, 103,

18 and/or 112.

19     4.     Plaintiff's claim for relief is barred in whole or in part by the doctrine

20 of inequitable conduct, as set forth in detail in the Counterclaims.

21     5.     Plaintiff's claim for relief is barred in whole or in part by the doctrine

22 of patent misuse.

23     6.     Plaintiff is estopped, based on statements, representations, and

24 admissions made during the prosecution of the patent applications resulting in the

25 '970 Patent and '881 Patent, from asserting that Cornerstone has infringed, directly

26 or indirectly, any claim of the '970 Patent or '881 Patent, either literally or under the

27 doctrine of equivalents.

28

1    7.    Plaintiff's claim for relief is barred in whole or in part under the

2  doctrines of estoppel, waiver, and/or acquiescence.

3    8.    Plaintiff's recovery for alleged infringement of the '970 Patent and

4  '881 Patent, if any, is limited by Title 35 of the United States Code, including

5  without limitation 35 U.S.C. §§ 286 and 287.

6    9.    Plaintiff is not entitled to injunctive relief as it has, at a minimum, no

7  irreparable (alleged) damages and an adequate remedy at law.

8    10.    Plaintiff's claim for relief is barred in whole or in part by the doctrine

9  of implied license.

10    11.    Cornerstone reserves the right to rely on all defenses under Federal

11  Rule of Civil Procedure 8, Title 35 of the United States Code, and any other defense,

12  at law or at equity, that now exists, or that may in the future be available through

13  information obtained through discovery or at trial.

14    WHEREFORE, Cornerstone respectfully requests that the Court enter

15  judgment against Plaintiff on all counts of its Complaint, deny all relief requested by

16  Plaintiff, and award such other relief to Cornerstone as the Court deems just and

17  proper under the circumstances.

18  ## COUNTERCLAIMS

19    Defendant, Cornerstone Manufacturing and Distribution, Inc.

20  ("Cornerstone"), pleads the following counterclaims against Plaintiff, Pensmore

21  Reinforcement Technologies, LLC d/b/a Helix Steel.

22  ### PARTIES

23    1.    Cornerstone is a California corporation located at 955 Cornerstone

24  Way, Corona, California.

25    2.    Upon information and belief, Plaintiff is a limited-liability company

26  headquartered in Ann Arbor, Michigan that was previously known as Polytorx,

27  LLC.

28

ANSWER, SEPARATE DEFENSES,
AND COUNTERCLAIMS
5:21-cv-01556-JWH-SHK

3.     This is an action for declaratory judgment in which there is an actual case or controversy between Plaintiff and Cornerstone relating to whether Cornerstone infringes U.S. Patent No. 10,266,970 (the " '970 Patent") and U.S. Patent No. 9,440,881 (the " '881 Patent"). and whether one or more claims of the '970 Patent and '881 Patent (collectively, the "Patents-in-Suit") are invalid or unenforceable. This action arises under federal patent law, 35 U.S.C. §§ 101 *et seq.*

## JURISDICTION AND VENUE

4.     This Court has subject-matter jurisdiction over this action based on 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

5.     Plaintiff is subject to personal jurisdiction in this Court because it has sued Cornerstone for patent infringement, thereby consenting to jurisdiction in this District, where Cornerstone resides and has a regular and established place of business under 28 U.S.C. § 1400(b).

6.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400(b).

## STATEMENT OF FACTS

7.     Plaintiff has sued Cornerstone, alleging that Cornerstone infringes one or more claims of each of the Patents-in-Suit.

8.     Cornerstone denies that it infringes any claim of either of the Patents-in-Suit.

9.     Cornerstone further alleges that one or more claims of each of the Patents-in-Suit are invalid under 35 U.S.C. §§ 101 *et seq.*, including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

10.     Cornerstone further alleges that the Patents-in-Suit are unenforceable due to inequitable conduct.

11.     Pensmore's inequitable conduct is based on the failure of the named inventors of the Patents-in-Suit to disclose Pensmore's own invalidating prior art

1 and other prior art when Pensmore sought patent protection before the United States
2 Patent and Trademark Office ("USPTO").

### FIRST COUNTERCLAIM

### Declaratory Judgment of Noninfringement of the '881 Patent

12.   Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

13.   There is an actual and justiciable controversy between Cornerstone and Plaintiff whether Cornerstone has directly or indirectly infringed any valid claim of the '881 Patent.

14.   Cornerstone has not in the past directly or indirectly infringed, and is not now directly or indirectly infringing, any valid claim of the '881 Patent.

15.   Cornerstone seeks a declaration from this Court that Cornerstone has not directly or indirectly infringed and does not directly or indirectly infringe any valid claim of the '881 Patent.

### SECOND COUNTERCLAIM

### Declaratory Judgment of Invalidity of the '881 Patent

16.   Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

17.   There is an actual and justiciable controversy between Cornerstone and Plaintiff regarding the invalidity of the claims of the '881 Patent.

18.   Each and every claim of the '881 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

19.   For example, and without limitation, as apparently interpreted by Plaintiff, the '881 Patent is invalid as anticipated or rendered obvious by a number of prior-art references, including without limitation:

- U.S. Patent No. 6,060,163
- U.S. Patent No. 5,989,713
- PCT Application No. PCT/US2012/055567

- Prior sales and public uses by Plaintiff in the United States, at least as early as 2009, of the Helix 5-25 product, which had all the features of at least claim 3 of the '881 Patent as apparently construed by Plaintiff in this lawsuit.

20.     Separately or in combination, the prior-art references enumerated in paragraph 17, as apparently interpreted by Plaintiff, disclose at least:

3. A micro reinforcement comprised of a twisted steel fiber having elastic, perfectly plastic behavior up to the point of dominant crack formation in a concrete matrix reinforced by the micro reinforcement, the twisted steel fiber further having stable tensile resistance after dominant crack formation up to a characteristic length determined by length, material used to manufacture and the number of twists provided in the twisted steel fiber, wherein the twisted steel fiber meets the following criteria:

a. a strain capacity increase requirement determined by tensile test results indicating a statically significant increase (minimum of 95% confidence, the maximum p-value in a two sample t-test, 0.05) in tensile strain capacity versus structural plain concrete, wherein a minimum of six control (plain concrete) specimens are considered in the analysis in addition to a minimum number of twisted steel fiber samples; and

b. a post-crack tensile stability requirement determined by tensile test results indicating that the median of a load carried at Sa (design crack width) of the test specimen divided by a maximum load after 0.01 in displacement is equal to or greater than 0.85, wherein the twisted steel fiber

crack width, Sa, is the crack width resulting from tensile stresses typically measured for structural design applications and represents the average upper limit of displacement in a direct tension test where the stress remains stable, wherein Sa is set forth as:

$$Sa = \delta + X/3 \hspace{3cm} \text{(Eq. 1)}$$

where:

$\delta$=material elongation as stated on raw material certification test reports, inch (mm)

$X$=elongation from twist, representing the materials approximate ability to "stretch" and need not be exactly determined, inch (mm)

$$X = 1 - \cos\left(a\tan\left(\frac{n2\pi d}{l}\right)\right) \hspace{2cm} \text{(Eq. 2)}$$

and where:

n=number of full twists in the twisted steel fiber

d=equivalent diameter of the twisted steel fiber, inches (mm)

L=length of the twisted steel fiber, inches (mm)

X=percentage reduction in length from twisting of the twisted steel fiber

and where:

the resulting values of Sa are used as a reference point for computing tensile resistance and compute maximum allowable crack width.

21.     Cornerstone seeks a declaration from this Court that the claims of the '881 Patent are invalid.

### THIRD COUNTERCLAIM

### Declaratory Judgment of Unenforceability of the '881 Patent

22.     Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

23.     There is an actual and justiciable controversy between Cornerstone and Plaintiff whether the '881 Patent is unenforceable due to Plaintiff's inequitable conduct before the USPTO.

24.     Luke Pinkerton and Joseph L. Stecher are named inventors on both Patents-in-Suit. Jeffrey Novak is an additional named inventor on the '881 Patent.

25.     Upon information and belief, Mr. Pinkerton is a current employee of Pensmore and has been an employee of Pensmore continuously since the time the applications that became the Patents-in-Suit were filed.

26.     On information and belief, many years before the critical date of the Patents-in-Suit, at least as early as 2009, Plaintiff made sales in the United States of the Helix 5-25 product, which had all the features of at least claim 3 of the '881 Patent as apparently construed by Plaintiff in this lawsuit.

27.     Furthermore, on information and belief at the time of the sales, Plaintiff had publicly used the on-sale Helix 5-25 product in exactly the same manner that Plaintiff now alleges Cornerstone's use of its Accused Products constitutes infringement of at least claim 3 of the '881 Patent.

28.     Upon information and belief, Mr. Pinkerton, Mr. Stecher, and Mr. Novak (the " '881 Inventors") were aware of Plaintiff's prior invalidating sales and public uses of the Helix 5-25 product at the time the application that became the '881 Patent was filed. Yet the '881 Inventors did not disclose Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product to the USPTO.

29.     But for the decision of the '881 Inventors to withhold from the USPTO information and documentation concerning Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product, the '881 Patent would not have issued.

30.    Given the facts described above, it is reasonable to infer that at least the '881 Inventors intentionally deceived the USPTO in order to obtain allowance of the '881 Patent.

31.    The failure of at least the '881 Inventors to disclose invalidating prior sales and public uses of the Helix 5-25 product, combined with the intent of the '881 Inventors to deceive the USPTO, renders the '881 Patent unenforceable due to inequitable conduct.

### FOURTH COUNTERCLAIM

### Declaratory Judgment of Noninfringement of the '970 Patent

32.    Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

33.    There is an actual and justiciable controversy between Cornerstone and Plaintiff whether Cornerstone has directly or indirectly infringed any valid claim of the '970 Patent.

34.    Cornerstone has not in the past directly or indirectly infringed, and is not now directly or indirectly infringing, any valid claim of the '970 Patent.

35.    Cornerstone seeks a declaration from this Court that Cornerstone has not directly or indirectly infringed and does not directly or indirectly infringe any valid claim of the '970 Patent.

### FIFTH COUNTERCLAIM

### Declaratory Judgment of Invalidity of the '970 Patent

36.    Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

37.    There is an actual and justiciable controversy between Cornerstone and Plaintiff regarding the enforceability of the claims of the '970 Patent.

38.    Each and every claim of the '970 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

39.     For example, and without limitation, as apparently interpreted by Plaintiff, the '970 Patent is invalid as anticipated or rendered obvious by a number of prior-art references, including without limitation:

- U.S. Patent No. 6,060,163
- U.S. Patent No. 5,989,713
- Prior sales and public uses by Plaintiff in the United States, at least as early as 2009, of the Helix 5-25 product, which had all the features of at least claim 1 of the '970 Patent as apparently construed by Plaintiff in this lawsuit.

40.     Separately or in combination, the prior-art references enumerated in paragraph 17, as apparently interpreted by Plaintiff, disclose at least:

1. A reinforcing fiber comprising:

    a body defining a longitudinal axis and having a cross section in the shape of a bilateral truncated circle, wherein the bilateral truncated circle has an aspect ratio between 1.53 and 1.93, wherein the aspect ratio is a ratio of width ($w$) to thickness ($t$) of the body,

wherein the body is twisted along its longitudinal axis;

wherein the body has a width ($w$) of between 0.01375 inches and 0.0159 inches.

41.     Cornerstone seeks a declaration from this Court that the claims of the '970 Patent are invalid.

### SIXTH COUNTERCLAIM

### Declaratory Judgment of Unenforceability of the '970 Patent

42.     Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

43. There is an actual and justiciable controversy between Cornerstone and Plaintiff whether the '970 Patent is unenforceable due to Plaintiff's inequitable conduct before the USPTO.

44. On information and belief, many years before the critical date of the Patents-in-Suit, at least as early as 2009, Plaintiff made sales in the United States of the Helix 5-25 product, which had all the features of at least claim 1 of the '970 Patent as apparently construed by Plaintiff in this lawsuit.

45. Furthermore, on information and belief at the time of the sales, Plaintiff had publicly used the on-sale Helix 5-25 product in exactly the same manner that Plaintiff now alleges Cornerstone's use of its Accused Products constitutes infringement of at least claim 1 of the '970 Patent.

46. Upon information and belief, Mr. Pinkerton and Mr. Stecher (the " '970 Inventors") were aware of Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product at the time the application that became the '970 Patent was filed. Yet the '970 Inventors did not disclose Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product to the USPTO.

47. But for the decision of the '970 Inventors to withhold from the USPTO information and documentation concerning Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product, the '970 Patent would not have issued.

48. Additionally, many years before the critical dates for the Patents-in-Suit—from the beginning of the company until 2016—Plaintiff operated under an exclusive license from the University of Michigan, licensing U.S. Patent Nos. 5,989,731 and 6,060,163 (the "University of Michigan Patents").

49. Plaintiff relied on this exclusivity to develop its market dominance by informing others that it was the only legitimate source for twisted steel fibers because of the University of Michigan Patents.

50.     Upon information and belief, the only difference between the University of Michigan Patents and the '970 Patent is the particular cross-sectional shape of the fiber and the particular dimensions claimed.

51.     Indeed, the University of Michigan Patents disclose fibers having a polygonal shape but also disclose that other shapes are possible and would be within the scope of the invention. As U.S. Patent No. 5,989,731 states: "The individual fibers may be circular or of optimized shape according to this patent."

52.     As described above in paragraph 39, the University of Michigan Patents are prior-art references that anticipate or, in combination with other prior-art references, render obvious one or more claims of the '970 Patent.

53.     Upon information and belief, the '970 Inventors were aware of the University of Michigan Patents at the time the application that became the '970 Patent was filed. Yet the '970 Inventors did not disclose the existence of this invalidating prior art to the USPTO.

54.     But for the decision of the '970 Inventors to withhold from the USPTO information and documentation concerning the University of Michigan Patents, the '970 Patent would not have issued.

55.     Additionally, claim 10 of the '970 Patent purports to cover a method of making the fibers, the steps for which were fully performed for years prior to the critical date by the machines that Plaintiff owned and operated.

56.     Plaintiff admitted in a lawsuit it filed against the University of Michigan that the machines that were used in its earliest work to perform the same, or very similar, method, had been disclosed prior to the application that became the '970 Patent.

57.     Plaintiff accused the University of Michigan of breaching confidentiality obligations owed to Plaintiff, and further that the breach had resulted in its machine and method of manufacture being disclosed in South Korean patent number 1011373090000.

58.     The application that became the South Korean patent that Plaintiff accused of disclosing its alleged proprietary information was published in May of 2011.

59.     Upon information and belief, the '970 Inventors were aware of the May 2011 South Korean patent application at the time the application that became the '970 Patent was filed. Yet the '970 Inventors did not disclose the existence of this invalidating prior art to the USPTO.

60.     But for the decision of the '970 Inventors to withhold from the USPTO information and documentation concerning the May 2011 South Korean patent application, the '970 Patent would not have issued.

61.     Given the facts described above, it is reasonable to infer that at least the '970 Inventors intentionally deceived the USPTO in order to obtain allowance of the '970 Patent.

62.     The failure of at least the '970 Inventors to disclose invalidating prior sales and public uses of the Helix 5-25 product and multiple known, invalidating prior-art references to the USPTO, combined with the intent of the '970 Inventors to deceive the USPTO, renders the '970 Patent unenforceable due to inequitable conduct.

## PRAYER FOR RELIEF

Based on the foregoing allegations, Cornerstone respectfully requests the following relief:

A.     That Plaintiff's claim against Cornerstone be dismissed with prejudice and that all relief requested by Plaintiff be denied;

B.     That the Court enter a declaratory judgment in favor of Cornerstone that Cornerstone does not infringe any valid claim of the '970 Patent;

C.     That the Court enter a declaratory judgment in favor of Cornerstone that the '970 Patent is invalid;

D.     That the Court enter a declaratory judgment in favor of Cornerstone

1  that the '970 Patent is unenforceable due to Plaintiff's inequitable
2  conduct;

3  E.  That the Court enter a declaratory judgment in favor of Cornerstone
4      that Cornerstone does not infringe any valid claim of the '881 Patent;

5  F.  That the Court enter a declaratory judgment in favor of Cornerstone
6      that the '881 Patent is invalid;

7  G.  That the Court enter a declaratory judgment in favor of Cornerstone
8      that the '881 Patent is unenforceable due to Plaintiff's inequitable
9      conduct;

10 H.  That the Court award Cornerstone its costs;

11 I.  That this case be deemed exceptional, and that Cornerstone be awarded
12     its reasonable attorney fees in this action under 35 U.S.C. § 285; and

13 J.  That Cornerstone be granted such other and further relief as the Court
14     deems just and proper under the circumstances.

15                        **<u>DEMAND FOR JURY TRIAL</u>**

16 Cornerstone demands a trial by jury on all issues so triable.

17

18                        HOVEY WILLIAMS LLP

19

20 DATED: November 17, 2021        By:  /s/ ***Scott R. Brown***
21                                     Scott R. Brown
22                                     Attorneys for Defendant/Counterclaimant

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

On November 17, 2021, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF System, which will deliver electronic notification to all registered counsel of record.

/s/ ***Scott R. Brown***

Scott R. Brown
Attorney for Defendant/Counterclaimant