UMBERG ZIPSER LLP
Mark A. Finkelstein (SBN 173851)
mfinkelstein@umbergzipser.com
1920 Main Street, Ste. 750
Irvine, CA 92614
Telephone:  (949) 679-0052
Facsimile:  (949) 679-0461

DICKINSON WRIGHT PLLC
James K. Cleland (*Admitted Pro Hac Vice*)
JCleland@dickinson-wright.com
(734) 436-7356
Christopher J. Ryan (*Admitted Pro Hac Vice*)
CRyan@dickinson-wright.com
(734) 623-1907
Yafeez S. Fatabhoy (*Admitted Pro Hac Vice*)
YFatabhoy@dickinson-wright.com
(248) 205-3264
350 S. Main Street, Ste 300
Ann Arbor, MI 48104
Facsimile: (844) 670-6009

*Attorneys for Plaintiff*
*Pensmore Reinforcement Technologies, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENSMORE REINFORCEMENT TECHNOLOGIES, LLC d/b/a HELIX STEEL,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>CORNERSTONE MANUFACTURING AND DISTRIBUTION, INC.,<br><br>Defendant/Counter-Plaintiff. | CASE NO.: 5:21-cv-01556-JWH-SHKx<br><br>**PLAINTIFF'S ANSWER TO AMENDED COUNTERCLAIMS [ECF No. 37]** |

NOW COMES Plaintiff/Counter-Defendant PENSMORE REINFORCEMENT TECHNOLOGIES, LLC d/b/a HELIX STEEL ("Helix"), by and through its attorneys, and pursuant to the Court's Order dated July 5, 2022

1

[ECF No. 72], hereby files this Answer to Defendant/Counter-Plaintiff CORNERSTONE MANUFACTURING AND DISTRIBUTION, INC.'s ("Cornerstone") Amended Counterclaims [ECF No. 37], and states:

**PARTIES**

1. Cornerstone is a California corporation located at 955 Cornerstone Way, Corona, California.

**ANSWER:** Admitted.

2. Upon information and belief, Plaintiff is a limited-liability company headquartered in Ann Arbor, Michigan that was previously known as Polytorx, LLC.

**ANSWER:** Admitted.

3. This is an action for declaratory judgment in which there is an actual case or controversy between Plaintiff and Cornerstone relating to whether Cornerstone infringes U.S. Patent No. 10,266,970 (the " '970 Patent") and U.S. Patent No. 9,440,881 (the " '881 Patent") and whether one or more claims of the '970 Patent and '881 Patent (collectively, the "Patents-in-Suit") are invalid or unenforceable. This action arises under federal patent law, 35 U.S.C. §§ 101 *et seq*.

**ANSWER:** To the extent this paragraph states legal conclusions, no response is required. Plaintiff states that Defendant has accurately stated the nature of the declaratory action as filed, but denies that the claims of the '970 and '881 patents are invalid or unenforceable.

**JURISDICTION AND VENUE**

4. This Court has subject-matter jurisdiction over this action based on 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

**ANSWER:** Admitted.

5. Plaintiff is subject to personal jurisdiction in this Court because it has sued Cornerstone for patent infringement, thereby consenting to jurisdiction in this District, where Cornerstone resides and has a regular and established place of business under 28 U.S.C. § 1400(b).

**ANSWER:** Admitted.

6. Venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400(b).

**ANSWER:** Denied as stated. However, Helix does not contest venue in this District relative to the Amended Counterclaims.

## STATEMENT OF FACTS

7. Plaintiff alleges that Cornerstone infringes at least one claim of each of the Patents-in-Suit.

**ANSWER:** Admitted.

8. Cornerstone denies that it infringes any claim of either of the Patents-in-Suit.

**ANSWER:** Helix lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and thus denies them.

9. Cornerstone further alleges that one or more claims of each of the Patents-in-Suit are invalid under 35 U.S.C. §§ 101 et seq., including without limitation 35 U.S.C. §§ 101, 102, 103, and/or 112.

**ANSWER:** Helix lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and thus denies them.

10. Cornerstone further alleges that the Patents-in-Suit are unenforceable due to the inequitable conduct of Luke Pinkerton.

**ANSWER:** Helix lacks sufficient knowledge or information to form a belief as to the truth of the allegations in this paragraph, and thus denies them.

11. Upon information and belief, Mr. Pinkerton founded Plaintiff's predecessor company in or about January 2002, currently serves as Plaintiff's president and chief technology officer, and has served in those roles since the company's founding.

**ANSWER:** Helix admits that Luke Pinkerton founded Plaintiff's predecessor company in about January 2002, and that he currently serves as Helix's president and chief technology officer, but otherwise denied.

12. Upon information and belief, the Helix concrete-reinforcing fibers that Plaintiff began selling when the company was founded were developed at the University of Michigan and were licensed to Plaintiff under U.S. Patent No. 5,989,713 (the " '713 Patent") and U.S. Patent No. 6,060,163 (the " '163 Patent").

**ANSWER:** Denied.

13. The '713 Patent was issued November 23, 1999 from an application filed September 5, 1996.

**ANSWER:** Helix states that the '713 patent speaks for itself.

14. The '163 Patent was issued May 9, 2000 from an application filed August 25, 1999. It is a division of the application that issued as the '713 Patent.

**ANSWER:** Helix states that the '163 patent speaks for itself.

15. From Mr. Pinkerton's founding of the company, Plaintiff operated under an exclusive license from the University of Michigan, licensing the '713 Patent and '163 Patent (collectively, the "University of Michigan Patents") until their expiration on September 5, 2016.

**ANSWER:** Denied.

16. Plaintiff relied on its exclusive license to develop its market dominance by informing others that it was the only legitimate source for twisted steel fibers because of the University of Michigan Patents.

**ANSWER:** Denied.

17. Cornerstone's current president and CEO, Hans Hausfeld, first became aware of Plaintiff's Helix concrete-reinforcing fibers as an employee of Cornerstone in the late 2000s, when Cornerstone distributed Helix products.

**ANSWER:** Helix lacks knowledge or information sufficient to form a belief about the truth of the allegation, and accordingly, the allegation is denied.

18. In the early 2010s, Plaintiff was looking for investors in its company.

**ANSWER:** Admitted.

19. In 2011, Mr. Hausfeld and Steve Huff became investors in Plaintiff, and Mr. Hausfeld assumed the roles of Plaintiff's vice president and a member of its sales management team.

**ANSWER:** Admitted.

20. When Mr. Hausfeld and Mr. Huff were deciding whether to invest in Plaintiff, they raised the issue of the University of Michigan Patents with Mr. Pinkerton.

**ANSWER:** Denied.

21. Specifically, Mr. Hausfeld and Mr. Huff questioned Mr. Pinkerton about the long-term profitability of Plaintiff's Helix concrete reinforcing fibers, given that the University of Michigan Patents would expire in 2016.

**ANSWER:** Denied.

22. In response to Mr. Hausfeld's and Mr. Huff's concerns, Mr. Pinkerton assured them there was nothing to worry about, because he had a plan to extend patent protection for the Helix products beyond the life of the University of Michigan Patents. The Patents-in-Suit are the fruits of that plan.

**ANSWER:** Denied.

23. On information and belief, from at least about two years before the time Mr. Hausfeld became an investor and officer of Plaintiff in 2011 until he left the company in December 2015, neither Mr. Pinkerton nor anyone else at Plaintiff invented any new concrete reinforcing fibers, came into possession of any newly invented concrete reinforcing fibers, or was conducting any research and development relating to new concrete reinforcing fibers.

**ANSWER:** Denied.

24. Nevertheless, Mr. Pinkerton and his co-inventors filed the applications that would ultimately issue as the '970 Patent and '881 Patent in 2012 and 2013, respectively, for the purpose of extending patent protection for Plaintiff's Helix concrete-reinforcement products despite not having invented anything or otherwise being in possession of any invention.

**ANSWER:** Denied.

25. In their patent applications, which would eventually issue as the Patents-in-Suit, Mr. Pinkerton and his coinventors intentionally failed to disclose to the United States Patent and Trademark Office ("USPTO") Plaintiff's own invalidating prior art and other prior art, which Mr. Pinkerton knew would prevent the Patents-in-Suit from issuing and result in Plaintiff's Helix concrete-reinforcing products being unprotected by any U.S. patent once the University of Michigan Patents expired in 2016.

**ANSWER:** Denied.

## AMENDED FIRST COUNTERCLAIM

### Declaratory Judgment of Noninfringement of the '881 Patent

26. Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

**ANSWER:** Helix repeats and restates all prior paragraphs of its answer as though fully set forth herein.

27. Because Plaintiff asserts that Cornerstone infringes "at least claim 3 of the '881 Patent," there is an actual and justiciable controversy between Cornerstone and Plaintiff whether Cornerstone has directly or indirectly infringed the '881 Patent.

**ANSWER:** Admitted.

28. Cornerstone has not in the past directly or indirectly infringed, and is not now directly or indirectly infringing, claim 3 of the '881 Patent—i.e., the only asserted claim of the '881 Patent in Plaintiff's complaint—or any claim depending from claim 3.

**ANSWER:** Denied.

29.     Claim 3 recites:

3. A micro reinforcement comprised of a twisted steel fiber having elastic, perfectly plastic behavior up to the point of dominant crack formation in a concrete matrix reinforced by the micro reinforcement, the twisted steel fiber further having stable tensile resistance after dominant crack formation up to a characteristic length determined by length, material used to manufacture and the number of twists provided in the twisted steel fiber, wherein the twisted steel fiber meets the following criteria:

a. a strain capacity increase requirement determined by tensile test results indicating a statically significant increase (minimum of 95% confidence, the maximum p-value in a two sample t-test, 0.05) in tensile strain capacity versus structural plain concrete, wherein a minimum of six control (plain concrete) specimens are considered in the analysis in addition to a minimum number of twisted steel fiber samples; and

b. a post-crack tensile stability requirement determined by tensile test results indicating that the median of a load carried at Sa (design crack width) of the test specimen divided by a maximum load after

0.01 in displacement is equal to or greater than 0.85, wherein the twisted steel fiber crack width, Sa, is the crack width resulting from tensile stresses typically measured for structural design applications and represents the average upper limit of displacement in a direct tension test where the stress remains stable, wherein Sa is set forth as:

$$Sa = \delta + X/3 \qquad \qquad (Eq.\ 1)$$

where:

$\delta$=material elongation as stated on raw material certification test reports, inch (mm)

X=elongation from twist, representing the materials approximate ability to "stretch" and need not be exactly determined, inch (mm)

$$X = 1 - \cos\left(a\tan\left(\frac{n2\pi d}{l}\right)\right) \qquad \qquad (Eq.\ 2)$$

and where:

n=number of full twists in the twisted steel fiber

d=equivalent diameter of the twisted steel fiber, inches (mm)

L=length of the twisted steel fiber, inches (mm)

X=percentage reduction in length from twisting of the twisted steel fiber

and where:

the resulting values of Sa are used as a reference point for computing tensile resistance and compute maximum allowable crack width.

**ANSWER:** Admitted.

30. Plaintiff's infringement allegation is premised on Cornerstone's claim "that [Cornerstone's] product complies with IAPMO [International Association of Plumbing and Mechanical Officials] EC 015 and that it is 'physically equivalent' to Helix's 5-25 Micro Rebar TSMR, covered by the IAPMO EC 015 criteria." Plaintiff argues that because claim 3 of the '881 Patent "includes similar elements as the IAPMO EC 015 standard" and Cornerstone claims its Accused Products meet IAPMO's EC 015 criteria, the Accused Products therefore must infringe at least Claim 3 of the '881 Patent.

**ANSWER:** Helix denies that the allegations in this paragraph contain a complete and accurate recitation of Helix's infringement allegations or the basis thereof, and therefore, the allegations are denied.

31. But although IAPMO EC 015 contains some similar elements to claim 3 of the '881 Patent, it is not identical and does not recite each and every element of claim 3. Thus, compliance with IAPMO EC 015 does not equate to infringement of claim 3 of the '881 Patent, as alleged by Plaintiff.

**ANSWER:** Denied.

32. Furthermore, the accused products do not infringe on claim 3 for at least the reasons that Cornerstone does not incorporate the accused fibers into cement, the accused products by themselves are not a micro reinforcement within the meaning of the claim, Cornerstone never calculates a value for Sa as required by the claim and therefore no "resulting values of Sa are used as a reference point for computing tensile resistance and compute maximum allowable crack width," and on information and belief none of Cornerstone's customers ever calculate a value for Sa or perform the claimed characterization of cement incorporating the accused products.

**ANSWER:** Denied.

33. Cornerstone seeks a declaration from this Court that Cornerstone has not directly or indirectly infringed and does not directly or indirectly infringe claim 3 of the '881 Patent or any of its dependents, or any other claim of the '881 Patent that Plaintiff may assert to be or have been infringed in its future infringement contentions in this case.

**ANSWER:** Helix lacks knowledge or information sufficient to form a belief about the truth of what Cornerstone seeks, but Helix denies Cornerstone is entitled to any relief.

## AMENDED SECOND COUNTERCLAIM

### Declaratory Judgment of Invalidity of the '881 Patent

34. Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

**ANSWER:** Helix repeats and restates all prior paragraphs of its answer as though fully set forth herein.

35. There is an actual and justiciable controversy between Cornerstone and Plaintiff regarding the invalidity of at least claim 3 of the '881 Patent—i.e., the only claim of the '881 Patent that Plaintiff specifically asserts to be infringed in its First Amended Complaint.

**ANSWER:** Denied.

36. At least claim 3 of the '881 Patent is invalid under at least 35 U.S.C. §§ 102, 103, and/or 112.

**ANSWER:** Denied.

37.     For example, and without limitation, as apparently interpreted by Plaintiff, the '881 Patent is invalid as anticipated or rendered obvious by a number of prior-art references, including without limitation:

- U.S. Patent No. 6,060,163
- U.S. Patent No. 5,989,713
- PCT Application No. PCT/US2012/055567
- Prior sales and public uses by Plaintiff in the United States, at least as early as 2009, of the Helix 5-25  product, which had all the features of at least claim 3 of the '881 Patent as apparently construed by Plaintiff in this lawsuit.

**ANSWER:** Denied.

38. Separately or in combination, the prior-art references enumerated in paragraph 37, as apparently interpreted by Plaintiff, disclose all elements of claim 3.

**ANSWER:** Denied.

39. Specifically, Plaintiff's allegation that the Accused Products infringe claim 3 of the '881 Patent is based upon an alleged equivalence between the Accused Products and Plaintiff's own products. But Plaintiff was selling products in the United States having those identical characteristics under the trade name Helix 5-25 at least as early as 2009, more than two years prior to the filing date of the '881 Patent. Therefore, if the characteristics of the Accused Products alleged to be the basis for infringement are covered by claim 3, claim 3 is anticipated or rendered obvious by Plaintiff's own prior sales.

**ANSWER:** Denied.

40.    In addition, at least claim 3 of the '881 Patent is invalid under 35 U.S.C. § 112 for at least the reason that it is indefinite. The preamble of claim 3 recites "[a] micro reinforcement comprised of a twisted steel fiber …, wherein the twisted steel fiber meets the following criteria:" but criteria a and b in the body of the claim are directed toward the "strain capacity increase requirement" and "post-crack tensile stability requirement", respectively, of a concrete matrix, not of a twisted steel fiber. Because the criteria of claim 3 are a measure of a concrete matrix and not a steel fiber, at least claim 3 and its dependents fail to inform, with reasonable certainty, those skilled in the art about the scope of the purported invention.

**ANSWER:** Denied.

41. Cornerstone seeks a declaration from this Court that the claim 3 of the '881 Patent and any other claim of the '881 Patent that Plaintiff may assert to be or have been infringed in its future infringement contentions in this case are invalid.

**ANSWER:** Helix lacks knowledge or information sufficient to form a belief about the truth of what Cornerstone seeks, but Helix denies Cornerstone is entitled to any relief.

## AMENDED THIRD COUNTERCLAIM

### Declaratory Judgment of Unenforceability of the '881 Patent

42.    Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

**ANSWER:** Helix repeats and restates all prior paragraphs of its answer as though fully set forth herein.

13

43. There is an actual and justiciable controversy between Cornerstone and Plaintiff whether the '881 Patent is unenforceable due to Mr. Pinkerton's inequitable conduct before the USPTO.

**ANSWER:** Helix lacks knowledge or information sufficient to form a belief about the truth if this allegation, and therefore, the allegation is denied. Further answering, Helix states that Cornerstone's pleading is insufficient to state a claim of inequitable conduct and Helix further denies any and all allegations of inequitable conduct.

44. Mr. Pinkerton is the first named inventor on the '881 Patent. Joseph L. Stecher and Jeffrey Novak are named coinventors on the '881 Patent.

**ANSWER:** Admitted.

45. Mr. Pinkerton, Mr. Stecher, and Mr. Novak filed the application that would ultimately issue as the '881 Patent on December 18, 2013.

**ANSWER:** Helix admits that a PCT application that ultimately led to '881 patent was filed on December 18, 2013 naming Luke Pinkerton, Joseph Stecher and Jeffrey Novak as inventors and was based upon an earlier provisional application filed on December 18, 2012, but otherwise denies the allegations in this paragraph.

46. On information and belief, at least as early as 2009, Plaintiff made sales in the United States of the Helix 5-25 product, which had all the features of at least claim 3 of the '881 Patent as apparently construed by Plaintiff in this lawsuit.

**ANSWER:** Denied.

47. Furthermore, on information and belief, at the time of the sales, Plaintiff had publicly used the on-sale Helix 5-25 product in exactly the same manner that Plaintiff now alleges Cornerstone's use of its Accused Products constitutes infringement of at least claim 3 of the '881 Patent.

**ANSWER:** Denied.

48. Accordingly, the existence of the Helix 5-25 product and Plaintiff's prior U.S. sales of the Helix 5-25 product well over one year before Mr. Pinkerton and his coinventors applied for patent protection would have been material to the USPTO's evaluation of the application that would eventually issue as the '881 Patent.

**ANSWER:** Denied.

49. As the founder, president, and chief technology officer of Plaintiff, Mr. Pinkerton was aware of Plaintiff's prior invalidating sales and  public uses of the Helix 5-25 product at the time the application that became the '881 Patent was filed. Yet, upon information and belief, Mr. Pinkerton did not disclose and directed his coinventors not to disclose Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product to the USPTO because he knew that both University of Michigan Patents would expire in 2016, leaving the Helix 5-25 product and other Helix concrete-reinforcement products without patent protection and adversely affecting Plaintiff's market dominance and profits unless the USPTO could be deceived into issuing at least one new patent covering the same products.

**ANSWER:** Denied.

50. But for Mr. Pinkerton's decision to withhold and direct others to withhold material information and documentation from the USPTO concerning Plaintiff's

invalidating prior sales and public uses of the Helix 5-25 product, the '881 Patent would not have issued.

**ANSWER:** Denied.

51. Because neither Mr. Pinkerton nor anyone else at Plaintiff had invented any new concrete reinforcing fibers, had come into possession of any newly invented concrete reinforcing fibers, or was conducting any research and development relating to new concrete reinforcing fibers at the time the application that would ultimately issue at the '881 Patent was filed, the only reasonable inference to draw from Mr. Pinkerton's failure to disclose to the USPTO the material information described above is that he sought to and did intentionally deceive the USPTO in order to obtain allowance of the '881 Patent, thereby artificially and fraudulently extending patent protection for Plaintiff's Helix concrete reinforcing products and artificially inflating Plaintiff's profits following expiration of the University of Michigan Patents.

**ANSWER:** Denied.

52. Mr. Pinkerton's failure to disclose invalidating prior sales and public uses of the Helix 5-25 product, combined with his intent to deceive the USPTO, renders the '881 Patent unenforceable due to inequitable conduct.

**ANSWER:** Denied.

## AMENDED FOURTH COUNTERCLAIM

### Declaratory Judgment of Noninfringement of the '970 Patent

53. Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

**ANSWER:** Helix repeats and restates all prior paragraphs of its answer as though fully set forth herein.

54. Because Plaintiff asserts that Cornerstone infringes "at least claim 1 of the '970 Patent," there is an actual and justiciable controversy between Cornerstone and Plaintiff whether Cornerstone has directly or indirectly infringed the '970 Patent.

**ANSWER:** Admitted.

55. Cornerstone has not in the past directly or indirectly infringed, and is not now directly or indirectly infringing, claim 1 of the '970 Patent or any claim depending from claim 1.

**ANSWER:** Denied.

56.    Claim 1 recites:

1. A reinforcing fiber comprising:

a body defining a longitudinal axis and having a cross section in the shape of a bilateral truncated circle, wherein the bilateral truncated circle has an aspect ratio between 1.53 and 1.93, wherein the aspect ratio is a ratio of width (w) to thickness (t) of the body, wherein the body is twisted along its longitudinal axis; wherein the body has a width (w) of between 0.01375 inches and 0.0159 inches.

**ANSWER:** Denied.

57. Cornerstone's accused products do not infringe claim 1 of the '970 Patent for at least the reason that they are not manufactured to create and do not have a cross-section in the shape of a bilateral truncated circle.

1    **ANSWER:** Denied.

3    58. Cornerstone seeks a declaration from this Court that Cornerstone has not directly or indirectly infringed and does not directly or indirectly infringe claim 1 of the '970 Patent and its dependents, or any other claim of the '970 Patent that Plaintiff may assert to be or have been infringed in its future infringement contentions in this case.

8    **ANSWER:** Helix lacks knowledge or information sufficient to form a belief about the truth of what Cornerstone seeks, but Helix denies Cornerstone is entitled to any relief.

12    **AMENDED FIFTH COUNTERCLAIM**

**Declaratory Judgment of Invalidity of the '970 Patent**

14    59. Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

16    **ANSWER:** Helix repeats and restates all prior paragraphs of its answer as though fully set forth herein.

19    60. There is an actual and justiciable controversy between Cornerstone and Plaintiff regarding the invalidity of at least claim 1 of the '970 Patent—i.e., the only claim of the '970 Patent that Plaintiff specifically asserts to be infringed in its First Amended Complaint.

23    **ANSWER:** Denied.

25    61. At least claim 1 of the '970 Patent is invalid under at least 35 U.S.C. § 102, 103, 112, and/or 132.

27    **ANSWER:** Denied.

62. For example, and without limitation, as apparently interpreted by Plaintiff, the '970 Patent is invalid as anticipated or rendered obvious by a number of prior-art references, including without limitation:

- U.S. Patent No. 6,060,163
- U.S. Patent No. 5,989,713
- Prior sales and public uses by Plaintiff in the United States, at least as early as 2009, of the Helix 5-25 product, which had all the features of at least claim 1 of the '970 Patent as apparently construed by Plaintiff in this lawsuit.

**ANSWER:** Denied.

63. Separately or in combination, the prior-art references enumerated in paragraph 62, as apparently interpreted by Plaintiff, disclose all elements of at least claim 1 of the '970 Patent.

**ANSWER:** Denied.

64. For example, Plaintiff's Helix 5-25 product was on sale more than a year before the earliest priority date of the '970 Patent. The Helix 5-25 products embodied each and every limitation of claim 1 of the '970 Patent, and therefore constitute barring sales that anticipate or by themselves render obvious at least claim 1 of the '970 Patent.

**ANSWER:** Denied.

65. In addition, at least claim 1 of the '970 Patent is invalid under 35 U.S.C. § 112 for at least the reason that it fails for lack of written description and under 35 U.S.C. § 132 for improper inclusion of new matter. Claim 1 includes a recitation of

specific dimensions that are not supported by the original application, and furthermore new matter was improperly added by amendment dated January 3, 2019, to attempt to provide the missing support for the claim.

**ANSWER:** Denied.


66. Cornerstone seeks a declaration from this Court that claim 1 of the '970 Patent and any other claim of the '970 Patent that Plaintiff may assert to be or have been infringed in its future infringement contentions in this case are invalid.

**ANSWER:** Denied.


## AMENDED SIXTH COUNTERCLAIM

### Declaratory Judgment of Unenforceability of the '970 Patent

67. Cornerstone repeats and realleges all prior paragraphs of its Counterclaims as though fully set forth herein.

**ANSWER:** Helix repeats and restates all prior paragraphs of its answer as though fully set forth herein.


68. There is an actual and justiciable controversy between Cornerstone and Plaintiff whether the '970 Patent is unenforceable due to Mr. Pinkerton's inequitable conduct before the USPTO.

**ANSWER:** Helix lacks knowledge or information sufficient to form a belief about the truth if this allegation, and therefore, the allegation is denied.  Further answering, Helix states that Cornerstone's pleading is insufficient to state a claim of inequitable conduct and Helix further denies any and all allegations of inequitable conduct.

69. Mr. Pinkerton is the first named inventor on the '970 Patent. Mr. Stecher is a named coinventor on the '970 Patent.

**ANSWER:** Admitted.

70. Mr. Pinkerton and Mr. Stecher filed the application that would ultimately issue as the '970 Patent on September 14, 2012.

**ANSWER:** Helix admits that a PCT application that ultimately led to '970 patent was filed on September 14, 2012 naming Luke Pinkerton and Joseph Stecher as inventors and was based upon an earlier provisional application filed on April 3, 2012, but otherwise denies the allegations in this paragraph.

71. On information and belief, at least as early as 2009, Plaintiff made sales in the United States of the Helix 5-25 product, which had all the features of at least claim 1 of the '970 Patent as apparently construed by Plaintiff in this lawsuit.

**ANSWER:** Denied.

72. Furthermore, on information and belief at the time of the sales, Plaintiff had publicly used the on-sale Helix 5-25 product in exactly the same manner that Plaintiff now alleges Cornerstone's use of its Accused Products constitutes infringement of at least claim 1 of the '970 Patent.

**ANSWER:** Denied.

73. Accordingly, the existence of the Helix 5-25 product and Plaintiff's prior U.S. sales of the Helix 5-25 product well over one year before Mr. Pinkerton and his coinventor applied for patent protection would have been material to the USPTO's evaluation of the application that would eventually issue as the '970 Patent.

**ANSWER:** Denied.

74. As the founder, president, and chief technology officer of Plaintiff, Mr. Pinkerton was aware of Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product at the time the application that became the '970 Patent was filed. Yet, upon information and belief, Mr. Pinkerton did not disclose and directed his coinventor not to disclose Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product to the USPTO because he knew that Plaintiff's Helix concrete-reinforcement products would soon lack patent protection, adversely affecting Plaintiff's market dominance and profits unless the USPTO could be deceived into issuing at least one new patent covering the same products.

**ANSWER:** Denied.

75. But for Mr. Pinkerton's decision to withhold and direct others to withhold material information and documentation from the USPTO concerning Plaintiff's invalidating prior sales and public uses of the Helix 5-25 product, the '970 Patent would not have issued.

**ANSWER:** Denied.

76. Upon information and belief, the only difference between the University of Michigan Patents and the '970 Patent is the particular cross-sectional shape of the fiber and the particular dimensions claimed. Any such differences would have been obvious by themselves to one of ordinary skill in the art in possession of the University of Michigan Patents.

**ANSWER:** Denied.

77. Indeed, the University of Michigan Patents disclose fibers having a polygonal shape but also disclose that other shapes are possible and would be within the scope of the invention. As the '713 Patent states: "The individual fibers may be circular or of optimized shape according to this patent."

**ANSWER:** Denied.

78. As described above in paragraphs 59–64, the University of Michigan Patents are prior-art references that anticipate or, in combination with other prior-art references, render obvious one or more claims of the '970 Patent.

**ANSWER:** Denied.

79. Accordingly, the existence of the University of Michigan Patents and Plaintiff's license thereunder would have been material to the USPTO's evaluation of the application that would eventually issue as the '970 Patent.

**ANSWER:** Denied.

80. As the founder, president, and chief technology officer of Plaintiff, Mr. Pinkerton was aware of the University of Michigan Patents and Plaintiff's license thereunder at the time the application that became the '970 Patent was filed. Yet, upon information and belief, Mr. Pinkerton did not disclose and directed his coinventor not to disclose the existence of the University of Michigan Patents and Plaintiff's license thereunder to the USPTO because he knew that both University of Michigan Patents would expire in 2016, leaving the Helix 5-25 product and other Helix concrete-reinforcement products without patent protection and adversely affecting Plaintiff's market dominance and profits unless the USPTO could be deceived into issuing at least one new patent covering the same products.

**ANSWER:** Denied.

81. But for Mr. Pinkerton's decision to withhold and direct others to withhold material information and documentation from the USPTO concerning the University of Michigan Patents and Plaintiff's license thereunder, the '970 Patent would not have issued.

**ANSWER:** Denied.

82. Additionally, claim 10 of the '970 Patent purports to cover a method of making the fibers, the steps for which were fully performed for years prior to the critical date by the machines that Plaintiff owned and operated.

**ANSWER:** Denied.

83. Plaintiff admitted in a lawsuit it filed against the University of Michigan that the machines that were used in its earliest work to perform the same, or very similar, method, had been disclosed prior to the application that became the '970 Patent.

**ANSWER:** Denied.

84. In that lawsuit, Plaintiff accused the University of Michigan of breaching confidentiality obligations owed to Plaintiff, and further that the breach had resulted in its machine and method of manufacture being disclosed in South Korean patent number 1011373090000.

**ANSWER:** Denied.

85. The application that became the South Korean patent that Plaintiff accused of disclosing its alleged proprietary information was published in May of 2011.

1    **ANSWER:** Denied.

3    86. Accordingly, the existence of South Korean patent number
1011373090000 and Plaintiff's allegations about the method disclosed therein and
its longtime prior use in the United States would have been material to the USPTO's
evaluation of the application that would eventually issue as the '970 Patent.

7    **ANSWER:** Denied.

9    87. As the founder, president, and chief technology officer of Plaintiff, Mr.
Pinkerton was aware of the May 2011 South Korean patent application and
Plaintiff's allegations about the method disclosed therein and its longtime prior use
in the United States at the time the application that became the '970 Patent was
filed. Yet Mr. Pinkerton did not disclose to the USPTO the existence of the May
2011 South Korean patent application or the allegations Plaintiff had made in its
lawsuit against the University of Michigan about the method disclosed therein and
its longtime prior use in the United States, because he knew that Plaintiff's Helix
concrete-reinforcement products would soon lack patent protection, adversely
affecting Plaintiff's market dominance and profits unless the USPTO could be
deceived into issuing at least one new patent covering the same products.

20    **ANSWER:** Denied.

22    88. But for Mr. Pinkerton's decision to withhold from the USPTO material
information and documentation concerning the May 2011 South Korean patent
application, the method disclosed therein, and its longtime prior use in the United
States, the '970 Patent would not have issued.

26    **ANSWER:** Denied.

89. Because neither Mr. Pinkerton nor anyone else at Plaintiff had invented any new concrete reinforcing fibers, had come into possession of any newly invented concrete reinforcing fibers, or was conducting any research and development relating to new concrete reinforcing fibers at the time the application that would ultimately issue at the '970 Patent was filed, the only reasonable inference to draw from Mr. Pinkerton's failure to disclose to the USPTO the material information described above, is that he sought to and did intentionally deceive the USPTO in order to obtain allowance of the '970 Patent, thereby artificially and fraudulently extending patent protection for Plaintiff's Helix concrete reinforcing products and artificially inflating Plaintiff's profits following expiration of the University of Michigan Patents.

**ANSWER:** Denied.

90. Mr. Pinkerton's failure to disclose to the USPTO invalidating prior sales and public uses of the Helix 5-25 product and the multiple known, invalidating prior-art references described above, combined with his intent to deceive the USPTO, renders the '970 Patent unenforceable due to inequitable conduct.

**ANSWER:** Denied.

## **PRAYER FOR RELIEF**

Based on the foregoing allegations, Cornerstone respectfully requests the following relief:

A.   That Plaintiff's claim against Cornerstone be dismissed with prejudice and that all relief requested by Plaintiff be denied;

B.   That the Court enter a declaratory judgment in favor of Cornerstone that Cornerstone does not infringe any asserted claim of the '970 Patent;

C.   That the Court enter a declaratory judgment in favor of Cornerstone that at least the asserted claims of the '970 Patent are invalid;

D.   That the Court enter a declaratory judgment in favor of Cornerstone that the '970 Patent is unenforceable due to Plaintiff's inequitable conduct;

E.   That the Court enter a declaratory judgment in favor of Cornerstone that Cornerstone does not infringe any asserted claim of the '881 Patent;

F.   That the Court enter a declaratory judgment in favor of Cornerstone that at least the asserted claims of the '881 Patent are invalid;

G.   That the Court enter a declaratory judgment in favor of Cornerstone that the '881 Patent is unenforceable due to Plaintiff's inequitable conduct;

H.   That the Court award Cornerstone its costs;

I.   That this case be deemed exceptional, and that Cornerstone be awarded its reasonable attorney fees in this action under 35 U.S.C. § 285; and

J.   That Cornerstone be granted such other and further relief as the Court deems just and proper under the circumstances.

**ANSWER:** Helix denies that Cornerstone is entitled to any relief, let alone the relief requested above.

Dated: July 22, 2022

DICKINSON WRIGHT PLLC

By:   /s/James K. Cleland
          James K. Cleland
          Christopher J. Ryan
          Yafeez S. Fatabhoy

UMBERG ZIPSER, LLP
Mark A. Finkelstein

*Attorneys for Plaintiff Pensmore Reinforcement Technologies, LLC d/b/a Helix Steel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2022, a true and correct copy of the foregoing document has been served upon all counsel via the ECF notification system.

*/s/James K. Cleland*