1  UMBERG ZIPSER LLP
   Mark A. Finkelstein (SBN 173851)
2  mfinkelstein@umbergzipser.com
   1920 Main Street, Ste. 750
3  Irvine, CA 92614
   Telephone:  (949) 679-0052
4  Facsimile:  (949) 679-0461

5  DICKINSON WRIGHT PLLC
   James K. Cleland (*Admitted Pro Hac Vice*)
6  JCleland@dickinson-wright.com
   (734) 436-7356
7  Christopher J. Ryan (*Admitted Pro Hac Vice*)
   CRyan@dickinson-wright.com
8  (734) 623-1907
   Yafeez S. Fatabhoy (*Admitted Pro Hac Vice*)
9  YFatabhoy@dickinson-wright.com
   (248) 205-3264
10 350 S. Main Street, Ste 300
   Ann Arbor, MI 48104
11 Facsimile: (844) 670-6009

12 *Attorneys for Plaintiff*
   *Pensmore Reinforcement Technologies, LLC*
13
                **UNITED STATES DISTRICT COURT**
14
                **CENTRAL DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16  PENSMORE REINFORCEMENT TECHNOLOGIES, LLC d/b/a HELIX STEEL, | CASE NO.: 5:21-cv-01556 |
| 17 | |
| 18  Plaintiff, | **PLAINTIFF'S _EX PARTE_ APPLICATION TO MODIFY THE SCHEDULING ORDER AND EXTEND BRIEFING SCHEDULE ON DEFENDANT'S SUMMARY JUDGMENT MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 19  v. | |
| 20  CORNERSTONE MANUFACTURING AND DISTRIBUTION, INC., | |
| 21 | |
| 22  Defendant. | |
| 23 | |

24

25

26

27

28

                              1                    *Ex Parte* Application

## PLAINTIFF'S *EX PARTE* APPLICATION TO MODIFY THE SCHEDULING ORDER AND EXTEND SUMMARY JUDGMENT BRIEFING SCHEDULE

TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORDS:

PLEASE TAKE NOTICE that Plaintiff Pensmore Reinforcement Technologies, LLC d/b/a Helix Steel ("Helix") hereby applies to this Court, *ex parte* for an order modifying the scheduling order to extend case deadlines by three (3) months and likewise extending by three (3) months the current deadlines for briefing Defendant's October 13, 2022 summary judgment motion. This Application is filed on an *ex parte* basis because Helix's response to Defendant's October 13, 2022 summary judgment motion is currently due November 10, 2022. Per the Court's motion procedures, Helix cannot secure a motion hearing date until 2023, and could not have secured a hearing date prior to the response date given the 28-day response period.

This request is based largely on the life-threatening medical condition, extended hospitalization and extensive post-hospitalization care of Defendant's principal and CEO, Mr. Hans Hausfeld. Defendant represented on multiple occasions that Mr. Hausfeld is the primary decision maker at Cornerstone, the person generally involved in all aspects of Cornerstone's business, and "central" to

preparing Defendant's case, including identifying, locating and collecting documents responsive to Helix's document requests.  His illness prevented Mr. Hausfeld from being able to actively participate in the litigation, including document production and mediation, for approximately three (3) months.

After being advised of Mr. Hausfeld's life-threatening illness, Helix extended Cornerstone several extensions and professional courtesies expected of attorneys practicing before this Court.  Mr. Hausfeld's illness, however, had significant ripple effects, effectively delaying Defendant's discovery efforts, including the production of relevant, responsive and core documents requested by Helix over 9 months ago. To date, Cornerstone has not still not produced the majority of the documents Helix requested, and has still not run searches on supplemental Helix search terms according to the Court's ESI Order.

Defendant's October 13, 2022 summary judgment motion is a fact-intensive motion with over 60 exhibits (totaling over 700 pages in total), including but not limited to: (1) the self-serving declaration of a former Helix Australia sales representative now selling Plaintiff's competing Accused Product and who has been objecting to and delaying Plaintiff's Hague Convention discovery for over seven months (including discovery covering the very subject matter of his summary judgment declaration), (2) an expert declaration and opinions disclosed for the first time in Defendant's summary judgment papers (and before any expert discovery

*Ex Parte* Application

has occurred), and (3) extensive test data of an alleged prior art product also disclosed for the first time (and not in Defendant's invalidity contentions).  Thus, while Mr. Hausfeld's serious illness delayed Cornerstone's ability to timely complete its discovery obligations to Helix, Cornerstone was able to use that time to prepare and file its Motion for Summary Judgment.[1]

Helix accordingly requests an extension of the case schedule and summary judgment briefing schedule by three (3) months in order to recover the time lost by Mr. Hausfeld's illness.  That is the minimum amount of time that will allow Helix to conduct discovery not only related to its affirmative claims, but also to Defendant's fact-intensive motion for summary judgment, including significant document discovery, depositions, Hague Convention discovery integral to Helix's claims and Defendant's summary judgment motion (including a key declarant), and expert discovery related to summary judgment.

Pursuant to L.R. 7-19.1, Helix's Counsel reached out to Defendant's Counsel, via email, regarding the requested relief. (Declaration of Yafeez S. Fatabhoy ("Fatabhoy Decl.", Exhibit 1). Defendant's counsel would not stipulate to the requested relief, instead offering a 4-week extension of the case schedule deadlines and the briefing schedule on Defendant's summary judgment motion.  *Id.*

---

[1] Mr. Hausfeld was available to resume participation in discovery the day Defendant held a Local Rule 7.3 conference with Plaintiff to address filing Defendant's summary judgment motion.

*Ex Parte* Application

1  This is not sufficient.  As such, Helix is left with no other alternative than to bring

2  this *Ex Parte* Application to Modify the Scheduling Order and Extend the Summary

3
4  Judgment Briefing Schedule. In accordance with Civil Local Rule 7-19.1, Helix

5  advised Defendants by telephone of the date and substance of this ex parte

6  application.

7
   Defendant opposes this ex parte application. The contact information for Counsel

8
9  for Defendants is as follows:

10  Defendant Cornerstone Manufacturing and Distribution, Inc.
    Scott R. Brown
11  Hovey Williams LLP
    10801 Mastin Blvd., Suite 1000
12  84 Corporate Woods
13  Overland Park, Kansas 66210
14  Telephone: 913-232-5044
    Email: sbrown@hoveywilliams.com
15

16

17  DICKINSON WRIGHT PLLC

18                           By:   /s/*Yafeez S. Fatabhoy*
                                   Yafeez S. Fatabhoy
19

20                                 DICKINSON WRIGHT PLLC
                                   James K. Cleland
21                                 Christopher J. Ryan
                                   Yafeez S. Fatabhoy
22                                 350 S. Main Street, Suite 300
                                   Ann Arbor, MI  48104
23
                                   *Attorneys    for    Plaintiff    Pensmore*
24                                 *Reinforcement Technologies, LLC d/b/a*
                                   *Helix Steel*
25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

### I.   FACTUAL BACKGROUND

3

4

Helix filed the present lawsuit on September 14, 2021 alleging patent

5

infringement by Defendant of two patents related to micro-reinforced concrete.

6

(Dkt. No. 1.)  Helix filed a First Amended Complaint on December 8, 2021.  (Dkt.

7

No. 29.)  Helix served its first set of written discovery, including interrogatories and

8

requests for production, on January 18, 2022.  (Fatabhoy Decl., Exhibit 2.)  In late

9

April 2022, Plaintiff issued a number of third party subpoenas, including to

10

Defendants' sales representatives.  (Fatabhoy Decl., Exhibit 3.)   One of those

11

subpoenas was to Reuben Ramsay, a former Helix Australian sales agent who now

12

13

purchases, markets and sells the Accused SteelX Product from Defendant.  (*Id.*) Mr.

14

Ramsay's counsel would not accept service.[2]  (Fatabhoy Decl., Exhibit 4.)

15

16

The parties negotiated a stipulated ESI Order entered by the Court on April

17

28, 2021, including provisions for (1) initial search terms provided by the parties to

18

19

---

20

[2] Plaintiff filed a lawsuit in the E.D. Michigan against Mr. Ramsay alleging trade
21 secret theft and breach of confidentiality agreements, and Defendant's counsel has
worked closely with Mr. Ramsay's counsel in both cases. Plaintiff was ultimately
22 forced to prepare and file a motion for Letters of Request (Dkt. No. 67), obtain an
23 order from this Court granting the Letters of Request (Dkt. No. 71), work with
Australian counsel to serve the subpoena on Mr. Ramsay in Australia, and endure
24 months of objections to the subpoena by Mr. Ramsay. Six months later, Plaintiff
25 still has no documents from Mr. Ramsay. During that same time period of objection
and delay, however, Mr. Ramsay found time to cooperate extensively with
26 Defendant - working with Defendant to allegedly obtain old Helix product from
27 prior to 2010, agreeing to sit for a deposition for Defendant to support its summary

28

*Ex Parte* Application

search their own documents, and (2) supplemental search terms provided by the opposing party to account for important search terms omitted by the searching party – all to help identify certain categories of electronic documents responsive to the parties' discovery requests. (Dkt. No. 50.)

Five months after serving written discovery, however, Plaintiff had still received no documents from Defendant other than prior art and file histories. Accordingly, on June 17, 2022, Helix sent Defendant a discovery deficiency letter outlining the deficiencies in Defendant's responses to Helix's document requests and interrogatories.  (Fatabhoy Decl., Exhibit 5.)  After several reminders, Helix initiated a meet and confer on July 14, 2022 to address Defendant's discovery responses and failure to produce documents.  On July 25, 2022, Defendant emailed Helix stating that Mr. Hausfeld "has experienced a medical emergency and is presently in a hospital in very serious condition."  (Fatabhoy Decl., Exhibit 6.) Cornerstone informed Plaintiff that because Mr. Hausfeld is "central to preparing our case and he is unable to help us at this time . . . this unfortunate development will necessarily delay Cornerstone's case preparation and supplementation of

---

judgment motion and submitting a lengthy declaration in support of Defendant's summary judgment motion.  (*See* Dkt. No. 87-22.)  Indeed, the Court quashed Defendant's attempt to take Mr. Ramsay's deposition on June 9, 2021 because (1) Mr. Ramsay refused to respond to Helix's subpoena and (2) written discovery from Mr. Ramsay was required before his deposition and any summary judgment motion based upon his declaration. (Dkt. No. 64.)

*Ex Parte* Application

discovery responses." (*Id.*)  Cornerstone added that "once Mr. Hausfeld's condition and prognosis are better understood, we may also reach out to discuss formal extensions of other dates." (*Id.*)

As is expected of all attorneys practicing in this District, Helix did not press Cornerstone for responses, but allowed time for Mr. Hausfeld to recover.[3]

Helix remained diligent in pursuing discovery.  Having received no update on Mr. Hausfeld's medical condition, on August 18, 2022, Helix sent a follow up email to its June 17, 2022 letter and the parties July 14, 2022 meet and confer, again addressing Defendant's failure to produce documents.  (Fatabhoy Decl., Exhibit 7).  During the parties August 22, 2022 claim construction hearing, Helix's counsel informed the Court of Mr. Hausfeld' health issues, and noted that Mr. Hausfeld's condition might require an adjustment to the case schedule.  On August 30, 2002, Helix followed up with Cornerstone again. (Fatabhoy Decl., Exhibit 8.) Cornerstone responded:

> "Hans Hausfeld experienced a medical emergency in July that left him in very serious condition. We are following up with Mr. Hausfeld this

---

[3] *See* Civility and Professionalism Guidelines for the Central District of California, § (B)(2) ("Unless time is of the essence, as a matter of courtesy we will grant first requests for reasonable extensions of time to respond to litigation deadlines. After a first extension, any additional requests for time will be considered by balancing the need for expedition against the deference one should ordinarily give to an opponent's schedule of personal and professional engagements, the reasonableness of the length of extension requested, the opponent's willingness to grant reciprocal extensions, the time actually needed for the task, and whether it is likely a court would grant the extension if asked to do so.")

*Ex Parte* Application

week regarding his current condition and ability to resume participation in this litigation and will advise you further when we have more information."

(Fatabhoy Decl., Exhibit 9.)

Hearing no response and having only received 246 documents (the vast majority of which were file histories and prior art), Helix followed up again on September 15, 2022. (Fatabhoy Decl., Exhibit 10.) Helix encouraged Defendant to proceed with discovery from other custodians, and informed Defendant that written discovery and document production delays were causing ripple effects on depositions, other discovery and the case deadlines. (*Id.*) In response that same day, Cornerstone informed Helix that: "Mr. Hausfeld is the only person at Cornerstone with knowledge of and access to the additional custodial documents that had been searched for pursuant to Section 4(b) of the ESI Order. Those documents had not been provided to the vendor before Mr. Hausfeld's illness." Cornerstone also provided more detail on Mr. Hausfeld's illness:

> "By way of update, Mr. Hausfeld's condition was very severe, to the point of being life threatening. He experienced multiple organ failure and was in the hospital in ICU for several weeks. He returned home only recently, continues to experience extreme fatigue and other side effects, is undergoing additional testing as new adverse symptoms continue to arise, and requires dialysis multiple times a week until his kidney function returns to normal. Thus, Mr. Hausfeld's current health and energy level permit him to devote only a very limited part of each day to his business. In short, this is not a refusal to participate in the discovery process. Although Mr. Hausfeld is recovering, the pace of

*Ex Parte* Application

that recovery is such that we believe it appropriate to discuss an extension in the schedule."

(Fatabhoy Decl., Exhibit 10.)[4]

On September 20, 2022, Cornerstone expressed its intent to file a summary judgment motion.  (Fatabhoy Decl., Exhibit 11.)  Then, in an email just prior to a scheduled call between the parties on Defendant's discovery deficiencies and Defendant's summary judgment motion, Cornerstone informed Helix that Mr. Hausfeld had "recovered enough strength that Cornerstone has now been able to complete its ESI searching." (Fatabhoy Decl., Exhibit 11.)  Thus, Cornerstone timed Mr. Hausfeld's recovery such that it could immediately move for summary judgment, rather than first rectifying the months-long delay of complying with its discovery obligations to Helix.[5]

On October 13, Cornerstone filed its highly fact-intensive motion for summary judgment of invalidity based upon anticipation and obviousness. (Dkt. No. 87.)  Cornerstone's motion is over 700 pages, attaches 60 exhibits, features

---

[4] The parties never discussed the nature or length of an extension of the schedule at that time.  Given all the issues and delay, Helix never felt that it had an accurate understanding of (1) when Defendant would produce documents, (2) when Defendant's key witnesses would be available for deposition, or (3) when the delay would end to understand how far the case schedule needed to be extended.

[5] While Defendant contends that it was unable to produce documents without Mr. Hausfeld's assistance, the parties exchanged ESI Hit results as early as February, 2022, before the onset of the illness. Thus, Defendant's documents were presumably within Defendant's Counsel's possession during Mr. Hausfeld's health crisis.

*Ex Parte* Application

numerous documents that Cornerstone never produced, and includes declarations from Reuben Ramsay (who still has not produced documents and has not been deposed), testing data from a third party firm that had never been disclosed before, and an expert declaration that likewise had not been disclosed prior to the filing. In short, Defendant's Motion for Summary Judgment features a host of facts, documents, declaration and other information for which extensive discovery is necessary.

To date, while Helix has produced over 20,000 documents totaling over 180,000 pages, Defendant has only produced around 2800 documents totaling 15,597 pages.[6]  And approximately one-half of Defendant's volume comprises prior art and file histories.  Meanwhile, Defendant has refused to run hit reports for Helix's supplemental search terms per the Court's ESI Order.  (Fatabhoy Decl., Exhibit 12.)  While Defendant attempts to defend its production by the relative size of the parties, Defendant's paltry production is a product of its search terms.  For instance, while Defendant searched Plaintiff's formerly or rarely used "Polytorx" and "Pensmore" names, Defendant did not searched "Helix", thename Plaintiff goes by and is known by in the industry.[7]  (*Id.*)  Helix provided Defendant with

---

[6] Defendant just produced under three thousand of those documents earlier this week on October 24, 2022.

[7] As former employees, Defendant's principals know this well, refer to Plaintiff as Helix, and regularly reference Plaintiff's products by their "Helix" brand.

*Ex Parte* Application

supplemental search terms (including "Helix") on May 26, 2022 that are certain to yield thousands of additional documents, with follow up revisions to those terms in September and early October.  The parties have reached a compromise on 9 of the 10 terms pending resolution of the 10th term, but Defendant has still not provided a hit report, let alone the documents responsive to those terms.  (*Id.*)

On October 7, 2022, the parties filed a stipulation to extend the settlement conference deadline and seek a referral of ADR to the Magistrate Judge.  (Dkt. No. 84.)   This stipulation not only explains Mr. Hausfeld's situation, but stresses the importance of substantial completion of document production to a meaningful settlement conference.  (*Id.*)   On October 11, 2022, the Court issued an order referring the present case to the Magistrate Judge for a settlement conference.  (Dkt. No. 85.)  The Magistrate Judge set the settlement conference for December 7, 2022. (Dkt. No. 88.)

On October 20, 2022, Helix approached Defendant to request a 3-month extension. (Fatabhoy Decl., Exhibit 1).  Defendant refused, instead suggesting that it would agree to 4-week extension of the case and summary judgment deadlines.[8] *Id.*  A one month extension would not make up for the substantial delays in this case. The bottom line is that Mr. Hausfeld's illness has led to delays that require

---

[8] Notably, Defendant's proposed extension would place Helix's response to Defendant's summary judgment motion on Dec. 8, 2022, the day after the settlement conference.

extensions of the case deadlines and summary judgment briefing schedule. Substantial document discovery from Defendant remains, not to mention depositions and Helix's Hague Convention discovery.

## II. ARGUMENT

### A. Ex Parte Relief is Warranted

Helix has no choice but file the present motion on an *ex parte* basis because of the pending November 10, 2022 summary judgment response brief deadline. "[A] party seeking ex parte relief must establish: (1) that the requesting party will be irreparably prejudiced if a motion is heard in accordance with regular procedures; and (2) that the requesting party is without fault in creating the crisis that requires ex parte relief or that the crisis was due to excusable neglect" *Robinson v. PPG Industries, Inc.*, 219CV04033ODWRAOX, 2021 WL 6882320, at *2 (C.D. Cal. Feb. 18, 2021). Helix's *Ex Parte* Application meets both prongs.

As to the first prong, the Court's Scheduling Order provides that the deadline for opposing dispositive motions is 28 days after the filing date of the motion. (Dkt. No. 53.) Even if it had reviewed Defendant's voluminous motion and asked for a meet and confer under Local Rule 7.3 on the Monday following the late night Thursday filing, Helix still would not have been able to obtain a hearing date prior to its November 10, 2022 response deadline. Indeed, based on the Court's schedule, the earliest Helix would be able to have its issue heard before the Court on a motion

*Ex Parte* Application

filed in the regular course is in 2023, well past not only Helix's Response deadline, but also the hearing scheduled before this Court.

As to the second prong, Helix is without fault in creating the need for an *ex parte* motion. Helix has been diligent in seeking necessary discovery, but was not able to obtain that discovery due to the serious health condition of Mr. Hausfeld. Cornerstone should not be able to now use Mr. Hausfeld's medical emergency to gain a tactical advantage in this case. There can be no doubt that Helix is not to blame for the current predicament, given the sequence of events detailed in the factual record recited above.

**B.    Helix's Request to Modify the Case Schedule and Extend the Summary Judgment Briefing Schedule Are Supported by Good Cause and Lack of Prejudice to Defendant**

The Court should extend the case deadlines and the briefing on Cornerstone's motion for summary judgment by 3 months. Helix granted Cornerstone professional courtesies and extensions to allow Cornerstone's principle to recover from his serious illness. Cornerstone, however, was using that time to gather evidence, prepare declarations, and draft its Motion for Summary Judgment, when it should have been complying with its obligations to provide discovery and produce documents. Now, Helix is faced with responding to a fact-intensive Motion for

*Ex Parte* Application

Summary Judgment without the benefit of any meaningful discovery. Helix should not be punished for acting professionally and ethically.

A scheduling order may be modified upon a showing of good cause and by leave of the Court. Fed. R. Civ. P. 6(b)(1)(A), 16(b)(4); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (describing factors to consider in ruling on motion to modify the schedule). In considering whether a party moving for a schedule modification has good cause, the Court primarily focuses on the diligence of the party seeking the modification. *Johnson*, 975 F.2d at 609 (citing Fed. R. Civ. P. 16 advisory committee's notes on the 1983 amendment). "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the amendment.'" *Id.* (quoting Fed. R. Civ. P. 16 advisory committee notes of 1983 amendment). The Court may also consider the prejudice to the party opposing the modification. *See id.*

There is good cause here. Specifically, as detailed above, Helix has been extremely diligent in seeking discovery. Specifically, Helix propounded discovery right at the outset of this case, followed up numerous times with Defendant , but

*Ex Parte* Application

accepted Cornerstone's representation that it was unable to comply with its discovery obligations while Mr. Hausfeld was seriously ill.

Likewise, there is no prejudice.  *First*, as described above, Defendant has only just produced some of its documents.  Many more are expected, including when Defendant uses proper search terms intended to capture documents responsive to Helix's document requests. Forcing Helix to respond to a fact intensive summary judgment motion and prepare initial expert reports is plainly prejudicial. Helix was at the mercy of Cornerstone's statements that it was unable to produce documents as a result of Mr. Hausfeld's health issues, and Helix took Cornerstone at its word. Cornerstone's delay went on for months. During that time, Cornerstone failed to produce documents and supplemental discovery responses necessary for Helix to prosecute its case. Unfortunately, it appears that during this time Cornerstone was busy gathering evidence in an effort to file a motion for summary judgment against Helix.

*Second,* the delay is a result of Mr. Hausfeld's life-threatening illness; not Helix's doing. Helix is sympathetic to health issues, but the net result is that Helix has not had the opportunity to obtain documents, or take depositions based on those documents, or pursue any additional necessary discovery based upon discovery that should have been provided months ago .   Mr. Hausfeld's illness caused and continues to cause a ripple effect of delay, including a significant delay in the

*Ex Parte* Application

production of any non-prior art documents until this week, and the continued failure to produce substantial numbers of additional documents certain to be highly relevant based upon common sense search terms. .   Helix requests the Court extend the case deadlines as follows:

| DEADLINE | CURRENT DATE | PROPOSED DATE |
|---|---|---|
| Settlement Conference | December 16, 2022 | December 16, 2022 |
| Initial Designation of Expert Witness | December 16, 2022 | March 16, 2023 |
| Designation of Rebuttal Expert Witness | January 20, 2023 | April 20, 2023 |
| Discovery Cut-off | February 17, 2023 | May 17, 2023 |
| File Dispositive Motion | March 17, 2023 | June 17, 2023 |
| Final Pretrial Conference | September 22, 2023 | December 22, 2023 |
| Jury Trial | October 16, 2023 | January 16, 2024 |

Additionally, there is good cause to extend the summary judgement briefing deadlines by 3 months as well. This extension will allow Helix to take discovery concerning the factual basis for Defendant's motion, including: 1)   two new declarations filed in support of Cornerstone's motion, including the declaration of an ex-Helix sales agent who is an Australian citizen and who has done everything

17                                    *Ex Parte* Application

in his power to block and delay Hague Convention discovery for over 6 months; 2) large numbers of exhibits produced for the first time in Defendant's motion; 3) a previously undisclosed expert report attached to Defendant's motion; and 4) previously undisclosed test results on an unauthenticated product already questioned by at least one deponent in this case..

There is likewise no prejudice to Defendant relative to its summary judgment motion. Briefing of Defendant's motion will be complete well in advance of the dispositive motion deadline, and Helix should be permitted to obtain and conduct the discovery that should have occurred prior to Defendant's fact-intensive motion in the first place. Indeed, the Magistrate Judge quashed summary judgment declarant Mr. Ramsay's deposition for this very reason, finding that his deposition should not proceed without documents, and that a summary judgment motion based upon an unauthenticated alleged prior art product would run into Federal Rule 56(d) issues as well. In fact, it is Helix that would be prejudiced by not having the time to conduct necessary discovery into the various declarations, experts, testing and exhibits supporting Defendant's motion.

### III. CONCLUSION

For the foregoing reasons, Helix requests that this Court extend the case deadlines in the Scheduling Order by three (3) months and extend briefing schedule

*Ex Parte* Application

1   on Defendant's October 13, 2022 summary judgment motion by the same

2   corresponding three (3) months.

3

4

5                               DICKINSON WRIGHT PLLC

6                    By:    /s/Yafeez S. Fatabhoy
                            Yafeez S. Fatabhoy
7

8                           DICKINSON WRIGHT PLLC
                            James K. Cleland
9                           Christopher J. Ryan
                            Yafeez S. Fatabhoy
10                          350 S. Main Street, Suite 300
                            Ann Arbor, MI  48104
11
                            *Attorneys   for   Plaintiff   Pensmore*
12                          *Reinforcement   Technologies,   LLC   d/b/a*
                            *Helix Steel*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         19                    *Ex Parte* Application

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on October 27, 2022, a true and correct copy of the

3

foregoing document has been served via e-mail upon all counsel of record.

4

5

6

*/s/Yafeez S. Fatabhoy*
Yafeez S. Fatabhoy

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Ex Parte* Application